**UNITED STATES of America**

v.

**Charleszette Ardel BRANDON**

Criminal No. 01–107–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 27, 2001.

Morris R. Parker, Jr., U.S. Attorney's Office, Alexandria, VA, for Plaintiff.

Matthew Alan Wartel, Bynum & Jenkins P.L.L.C., Alexandria, VA, for Defendant.

### *MEMORANDUM OPINION*

ELLIS, District Judge.

Indicted on six counts of bank fraud in violation of 18 U.S.C. § 1344, defendant Charleszette Brandon is now before the Court on a threshold motion to dismiss the Indictment.

## I.

The allegations of the Indictment are easily summarized. Specifically, Brandon is charged with participating in a scheme (i) to defraud and (ii) to obtain funds owned by, or under the control of, various financial institutions whose deposits and accounts are insured by the Federal Deposit Insurance Corporation, including Industrial Bank, Bank of America; NationsBank and HEW Federal Credit Union. In furtherance of the scheme, Brandon allegedly stole blank checks from individuals holding valid accounts at these financial institutions and thereafter, obtained false photo-identifications in the names of the valid account holders. Then, using the false photo identifications, she allegedly forged and negotiated the stolen checks at various retail businesses in the Washington D.C. Metropolitan area in exchange for goods and services. When the retailers presented the stolen checks to the financial institutions for payment, most were refused based on insufficient funds. One institution, however, namely the HEW Federal Credit Union, paid approximately $7,582.72 on certain forged checks, since the particular account contained sufficient funds to cover the forged checks.

In the six count Indictment, each count relates to a particular stolen and forged check presented by Brandon to a particular retail store in Sterling, Virginia between June 1998 and September 2000. Brandon now files this threshold motion to dismiss the Indictment, arguing that the allegations against her amount at most to a state bad check charge, but not federal bank fraud within the meaning of 18 U.S.C. § 1344.

## II.

A motion to dismiss the indictment tests whether the indictment sufficiently charges the offense set forth against the defendant. *See United States v. Sampson*, 371 U.S. 75, 78–79, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). In this regard, an indictment need only contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c)(1), Fed.R.Civ.P. In general, if an indictment sets forth the essential elements of the offense [1] in sufficient detail so as fairly to inform the defendant of the nature of the charge, then it is immune from attack on a motion to dismiss. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). *See also United States v. Darby*, 37 F.3d 1059, 1063 (4th Cir.1994) (same); *United States v. Hooker*, 841 F.2d 1225, 1231 (4th Cir.1988) (same). A review of the Indictment makes clear that it passes this test of legal sufficiency; it sets forth in ample detail the elements of the § 1344 bank fraud offenses Brandon is alleged to have committed.

Section 1344 defines two distinct offenses: [2] (i) a scheme and artifice to de-

---

1. An essential element of the offense is defined as one "whose specification...is necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

2. The statute, in its entirety, provides as follows:
   Whoever knowingly executes, or attempts to execute, a scheme or artifice—
   (1) to defraud a financial institution; or
   (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
   shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
   18 U.S.C. § 1344. Significantly, § 1344's two subsections are in the disjunctive, so that an individual may commit bank fraud under

fraud a financial institution, and (ii) a scheme and artifice to obtain any of the money or property owned by or under the control of a financial institution by means of false or fraudulent pretenses, representations, or promises. The three essential elements as to the first offense—§ 1344(1)—are (1) that defendant knowingly executed a scheme or artifice to defraud a financial institution, (2) that she did so with the intent to defraud, and (3) that the financial institution was then insured by the Federal Deposit Insurance Corporation. *See* 18 U.S.C. § 1344. *See also* Kevin F. O'Malley *et al.*, Federal Jury Practice and Instructions, § 47.11 (5th ed.2000). The essential elements of the second offense— § 1344(2)—differ only as to the first element, which is that defendant knowingly executed a scheme or artifice to obtain the money, funds or other property owned by or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promises. *See id.*

■ The Indictment here contains all essential elements of both offenses, as it alleges that Brandon (i) knowingly and intentionally executed a scheme and artifice (A) to defraud various specified financial institutions and (B) to obtain funds owned by or under the control of these financial institutions by means of false and

fraudulent representations, namely by forging checks on valid accounts at these institutions, (ii) that she did so with the intent to defraud, and (iii) that the particular financial institutions were, at the time, insured by the Federal Deposit Insurance Corporation and the National Credit Union Share Insurance Fund. *See United States v. Charleszette Ardel Brandon,* Criminal No. 01–107 (E.D.Va. Mar. 22, 2001) (Indictment). The Indictment also sufficiently details the alleged scheme,[3] as well as the manner in which Brandon executed the alleged scheme.[4] *See id.* Thus, on its face, the Indictment clearly passes muster under the applicable legal standard, as it sets forth the essential elements of the offenses in a manner that fairly informs Brandon of the nature of the charges against her. *See Hamling,* 418 U.S. at 117, 94 S.Ct. 2887.

### III.

But the analysis does not end here, as Brandon contends that the factual allegations contained in the Indictment, even if proven beyond a reasonable doubt, nonetheless fail to constitute the federal crime of bank fraud under 18 U.S.C. § 1344. Instead, she contends the allegations against her amount to nothing more than bad check charges governed exclusively by

provision (1) by defrauding a financial institution without making the false or fraudulent representations required by provision (2). *See United States v. Celesia,* 945 F.2d 756, 758 (4th Cir.1991).

**3.** Specifically, the Indictment charges Brandon with obtaining blank checks from valid bank accounts and accompanying false photo identifications in the following names: (i) Amelia A. Kaune, (ii) Towanda V. Odigie, (iii) Kathleen Franklin, (iv) Barbara Brown, (v) Robert D.G. Lewis and Jacqueline M. Lewis and (vi) Ruby Bellinger. Brandon is further charged with forging the signatures of these valid account holders on the blank checks and

then, using the false photo identifications, presenting the checks to various specified retails stores in the Washington D.C. Metropolitan area in order to obtain goods and services for her own personal use.

**4.** In this regard, the Indictment identifies six specific stolen and forged checks presented by Brandon on specific dates to particular retail stores in Sterling, Virginia. The Indictment further identifies the affected financial institutions as Industrial Bank (Count One), HEW Federal Credit Union (Count Two), Bank of America (Counts Three and Four), and NationsBank (Counts Five and Six).

state law. In support of this argument, she relies chiefly on the Fourth Circuit's decision in *United States v. Orr*, 932 F.2d 330 (4th Cir.1991) and a decision from this district, *United States v. Lowe*, Criminal No. 00–95–A (E.D.Va. Apr. 28, 2000) (Order). *Orr*, however, is easily distinguishable from the instant case and *Lowe* is neither controlling, nor persuasive.

In *Orr*, defendant Eugene Elkins used a false driver's license to open a checking account at First Union National Bank in the name of Eugene Rogers. Elkins initially deposited $1,000 into the account and thereafter, in the next day or so, drew the account down to a negative balance. In the following days, Elkins, with the assistance of his co-defendant Edward Orr, and using the account he opened under the name Eugene Rogers, wrote several checks to various local merchants in exchange for goods and services, knowing that this account contained insufficient funds to cover those checks. Given this insufficiency of funds, First Union, as expected, refused to honor the checks when presented by the merchants for payment. Thus, First Union was not defrauded and suffered no loss as a result of defendants' conduct in *Orr*. Rather, the victims of Elkins' and Orr's scheme were the merchants. The Fourth Circuit found these facts insufficient to constitute federal bank fraud, holding that the mere act of writing and presenting bad checks, knowing that such checks are not backed by sufficient funds, does not amount to bank fraud under 18 U.S.C. § 1344(1) or (2), absent a showing that the fraudulent conduct was intended to defraud the bank or that the bank actually suffered a loss, neither of which occurred there. *See Orr*, 932 F.2d at 332;[5] *see also United States v. Pittman*, 9 F.3d 1545 (Table), 1993 WL 466144 (4th Cir.1993) (discussing *Orr*).

The contrast between *Orr* and this case is instructive and makes clear that Brandon's reliance on *Orr* is unwarranted. *Orr* involved the relatively common situation in which an individual writes checks on a bank account he or an accomplice maintains (albeit under an alias), with knowledge that such checks are not backed by sufficient funds. In that common scenario, the individuals know full well that the bank will not honor the worthless checks when they are eventually presented to the bank for payment. Thus, the target of the fraud in *Orr* was the merchants, not the bank. Unlike the scheme in *Orr*, Brandon's scheme was designed to defraud banks, as well as merchants, and indeed succeeded in doing so. By stealing checks belonging to existing bank customers and then forging those customers' names on the checks, Brandon plainly intended to deceive first a merchant, and then the bank, as to the genuineness of the check.[6]

Another factor that distinguishes the instant case from *Orr* is that at least one financial institution—HEW Federal Credit Union—suffered a loss of funds as a result of Brandon's scheme.[7] The fact that the

---

5. The Fourth Circuit further recognized in *Orr* that the legislative history of 18 U.S.C. § 1344 "makes it abundantly clear that Congress did not intend the bank fraud statute to cover ordinary state law offenses, where...the fraud victim was not a [financial institution]." *Orr*, 932 F.2d at 332 (quoting *United States v. Blackmon*, 839 F.2d 900, 905 (2d Cir.1988)).

6. It was further part of Brandon's scheme that the bank, if called by a questioning merchant, would confirm that the account was genuine.

7. Although HEW's loss in this regard is not alone dispositive, as actual loss is not an element required under 18 U.S.C. § 1344, it is nonetheless a factor discussed in *Orr* and, indeed, one that distinguishes the instant case from the facts of *Orr*. The Fourth Circuit has

loss here was not greater was happenstance; Brandon could not have known that some of the checks she forged were on accounts containing insufficient funds; indeed, she surely assumed otherwise.

■ Unlike *Orr,* the Eastern District of Virginia's decision in *United States v. Lowe,* Criminal No. 00–95–A (E.D.Va. Apr. 28, 2000) (Order) involved facts that are essentially indistinguishable from those presented here. Indeed, in that case, the indictment charged Lowe with committing bank fraud on several financial institutions through a scheme to (i) steal checks issued on valid bank accounts and (ii) use those stolen checks to obtain merchandise from numerous retail stores in the area by forging the signature of the valid account holder on the stolen checks. The indictment further charged Lowe with obtaining false identification in the names of the valid account holders in furtherance of the scheme. Based on these allegations, the district court, in a two-page order, dismissed the Lowe indictment, finding "no allegations that any false statements, or false representations were made to any of the banks." [8] Relying on only two cases, *Orr* and *Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982),[9] the district court concluded that while the facts alleged in the *Lowe* indictment "may constitute numerous offenses,"

they do not allege bank fraud under 18 U.S.C. § 1344. *United States v. Lowe,* Criminal No. 00–95–A (E.D.Va. Apr. 28, 2000) (Order). Simply put, *Lowe,* although factually similar to the instant case, is neither controlling nor persuasive. To the contrary, where, as here, and as in *Lowe,* a defendant steals blank checks from valid account holders and thereafter forges the names of those valid account holders on the checks in order to obtain goods and services, knowing such checks will eventually be presented to financial institutions for payment, such conduct unquestionably amounts to bank fraud as defined in 18 U.S.C. § 1344.

A review of analogous case law from the Fourth and other circuits supports the conclusion that Brandon's alleged conduct fits comfortably within the scope of criminal conduct described in 18 U.S.C. § 1344. *See, e.g., United States v. Evans,* 168 F.3d 483 (Table), 1999 WL 4976 (4th Cir.1999) (applying for a vehicle loan in a false name and then using a stolen check in the same name to make a down payment on the vehicle constitutes bank fraud under § 1344); *United States v. Blackwell,* 49 F.3d 1232 (7th Cir.1995) (conspiring to defraud banks and merchants by presenting checks known to be stolen, forged or otherwise not backed by sufficient funds con-

---

recognized "that the victim of fraud need not suffer financial loss; rather, he need only be deprived of some right over that property, such as the right to exclusive use...." *United States v. Adler,* 186 F.3d 574 at 576 (4th Cir.1999). In other words, "the 'scheme to defraud clause' of the bank fraud statute requires only that a financial institution be exposed to 'an actual or potential risk of loss.'" *Colton,* 231 F.3d at 908 (quoting *United States v. Wilkinson,* 137 F.3d 214, 232 (4th Cir. 1998)).

8. Despite this ruling, it is clear that neither *Orr* nor the language of the statute itself requires a defendant to deal firsthand with the

relevant financial institution or make some false representation directly to the institution in order to commit bank fraud within the meaning of 18 U.S.C. § 1344. To hold otherwise would indeed lead to a "parade of horribles" in that a putative defrauder could enlist the assistance of any unknowing middleman in order to avoid federal prosecution for bank fraud.

9. *Williams* involved a violation of 18 U.S.C. § 1014 and thus, is inapposite to cases such as *Lowe* and the instant case which involve alleged violations of 18 U.S.C. § 1344. *See Williams,* 458 U.S. 279, 102 S.Ct. 3088.

stitutes bank fraud under § 1344); *United States v. Stavroulakis,* 952 F.2d 686, 694–95 (2d Cir.1992) (stealing and subsequently selling stolen checks constitutes bank fraud under § 1344, as "inherent in a sale of stolen checks is that they will eventually be presented to the drawee bank for payment; and payment over a forged signature exposes the bank to real loss."); *United States v. Celesia,* 945 F.2d 756 (4th Cir.1991) (engaging in a check kiting scheme constitutes bank fraud under § 1344).

## IV.

In sum, because (i) the Indictment contains all of the essential elements of the charged offense, (ii) *Orr* is distinguishable from the facts of the instant case, (iii) *Lowe* is neither controlling nor persuasive and (iv) analogous case law supports the conclusion that Brandon's alleged conduct falls within the purview of 18 U.S.C. § 1344, Brandon's motion to dismiss the Indictment must be denied.

An appropriate Order has issued