UNITED STATES, Plaintiff,

v.

CUONG GIA LE, et al., Defendants.

No. CRIM. 03–48–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 24, 2004.

James Trump, Assistant United States Attorney, Alexandria, VA, for Plaintiff.

Paul P. Vangellow, Falls Church, VA, Frank Salvato, Alexandria, VA, James Goodman Connell, III, Devine & Connell PLC, Fairfax, VA, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this seven defendant multi-count RICO[1] prosecution, defendants seek threshold dismissal of certain counts of the Indictment as legally insufficient. Specifically, defendants' dismissal motions raise the following questions concerning the adequacy of the Indictment:

(i) whether counts charging racketeering in violation of 18 U.S.C. § 1962 must allege continuity of, and relationship between, the alleged racketeering acts;

(ii) whether counts charging that defendants committed acts in aid of racketeering activity in violation of 18 U.S.C. § 1959 must set forth with specificity the alleged predicate acts of racketeering;

(iii) whether counts charging that defendants engaged in conspiracies to commit acts in aid of racketeering in violation of 18 U.S.C. § 1959 must allege overt acts in furtherance of the conspiracies; and

(iv) whether a count charging that certain defendants acted as accessories to murder, attempted murder, and assault with a dangerous weapon in aid of racketeering must be dismissed or, in the alternative severed, as insufficiently related to the other counts of the Indictment.

### I.

At issue is the Fourth Superseding Indictment ("Indictment"), which consists of twenty-five counts spread over forty-nine pages.[2] In essence, the Indictment alleges

---

1. Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. § 1961 *et seq.*

2. A brief description of the five indictments and their differences is warranted. The original Indictment, filed on January 30, 2003, charged defendant Cuong Gia Le with two counts—conspiracy to affect commerce by robbery in violation of 18 U.S.C. § 1951 and unlawful use and carrying of a firearm in violation of 18 U.S.C. §§ 924(c) and 2. The second incarnation, the Superseding Indictment, filed on September 25, 2003, charged

that the seven defendants are active members of a criminal enterprise or gang consisting primarily of Vietnamese youth and known as the "Oriental Playboys" or "OPB." According to the Indictment, defendants and other OPB members used this enterprise to commit various crimes, including burglary, drug distribution, credit card fraud, murder, assault, robbery, and firearms violations in Virginia, Maryland, and elsewhere between August 2000 and July 2003, all for purposes of enhancing the power, status, and position of OPB in the community and enriching its members. Much of the alleged violence perpetrated by OPB was intended to protect OPB members from, or to retaliate against, known rival youth gangs, such as the "Dragon Family" and the "Oriental Bloods." Defendant Cuong Gia Le's involvement in the criminal activities of OPB, the alleged criminal enterprise, serves as the basis for Count one of the Indictment, which charges Le with violating RICO, 18 U.S.C. § 1962(c), as well as Count two, which charges Le with conspiring with other unindicted conspirators to violate RICO, 18 U.S.C. § 1962(d).

The Indictment further alleges that between October 2000 and May 2001 defendants committed a series of criminal offenses and eight racketeering acts in Virginia and Maryland. Beginning in October 2000, and extending over a period of approximately seven months, Le, a leader of OPB, and several unindicted co-conspirators allegedly engaged in a series of nine home invasions and robberies of eight homes and one business in Fairfax, Charlottesville, and Midlothian, Virginia and Baltimore County and Montgomery County, Maryland. In the course of these home invasions and robberies, Le and his co-conspirators robbed their victims' of cash and valuable property, including jewelry, camera equip-

Le with the same two counts. It also charged four newly-indicted defendants—Tuyen Cao Phung, Thanh Quina, Cuong Quoc Tcheou, and Thang Quoc Vo—with conspiracy to affect commerce by robbery. Vo was also charged with an additional count of unlawful use and carrying of a firearm in violation of 18 U.S.C. §§ 924(c) and 2. Phung, Quina, Tcheou, and Vo have all since pled guilty and thus are not charged in subsequent superseding indictments. Next came the Second Superseding Indictment, filed on December 4, 2003, which charged Le and co-defendants Phu Van Ho, Loc Tien Nguyen, Nam Nguyen, Nguyen Nguyen, Vu Hoang Nguyen, and Ky Truong Quach with twenty-five counts including RICO in violation of 18 U.S.C. § 1962(c), a RICO conspiracy in violation of 18 U.S.C. § 1962(d), several violent crimes committed in aid of racketeering in violation of 18 U.S.C. § 1959, and several firearms offenses in violation of 18 U.S.C. § 924(c), among other offenses. The Second Superseding Indictment thus charged each of the seven defendants seeking dismissal here and set forth the twenty-five charges now pending against them. Both the Third Superseding Indictment, filed on February 5, 2004, and the Fourth Su-

perseding Indictment, filed on March 3, 2004, made only minor changes to the Second Superseding Indictment. The Third Superseding Indictment added a Notice of Special Findings with regard to counts twenty-three and twenty-four charging Le with murder in the course of a firearms offense in violation of 18 U.S.C. § 924(c) for which the government seeks the death penalty pursuant to 18 U.S.C. §§ 3591 and 3592. The Fourth Superseding Indictment made four changes to the Notice of Special Findings: (i) it realleged and incorporated the allegations of counts eight and nine, in addition to counts twenty-three and twenty-four; (ii) it removed the word "intentionally" from Special Finding B(3); (iii) it added a reference to counts eight and nine in Special Finding B(6); and (iv) it added a reference to counts eight and nine in Special Finding B(7). The Fourth Superseding Indictment also included a minor change to count twenty-five such that count twenty-five now lists and incorporates the five counts that set forth the violent crimes committed by Le to which defendants allegedly acted as accessories and realleges and incorporates by reference the allegations in those counts.

ment, electronics and stereo equipment, and a safe containing approximately $40,000 in cash and $30,000 in jewelry. On various of these occasions, Le and other co-conspirators brandished weapons and committed acts of violence against their victims, including threatening, confining, restraining, or assaulting them. In the course of certain of these instances, the perpetrators forcefully confined the victims, including children and elderly individuals, in bathrooms or closets. Furthermore, on at least two occasions, the perpetrators identified their victims prior to the robbery and followed them home from a public place before invading and robbing their homes. Although Le did not personally participate in all nine robberies, he allegedly participated in a violent home invasion in Bethesda, Maryland on April 6, 2001, during which he and others robbed the residence of approximately $4000 in cash and assaulted an occupant of the home with the butt of their handguns until the occupant was unconscious. These offenses serve as the basis for (i) Count 13, which charges Le with affecting commerce by robbery in violation of 18 U.S.C. § 1951, (ii) Count 14, which charges Le with conspiracy to affect commerce by robbery, in violation of 18 U.S.C. § 1951, (iii) Count 18, which charges Le with using and carrying a firearm during and relation to a violent crime, in violation of 18 U.S.C. §§ 2 and 924(c)(1), and (iv) two of the eight alleged racketeering acts that make up the alleged pattern of racketeering.

In addition to these home invasions and robberies, the Indictment also alleges that during the same period—October 2000 to May 2001—OPB members committed sev-

eral other crimes. Specifically, it is alleged that on November 23, 2000, in Falls Church, Virginia, defendant Loc Tien Nguyen[3] and Ky Truong Quach conspired with other unindicted conspirators to commit assault with a dangerous weapon. According to the government, pursuant to this conspiracy, the charged defendants traveled to Virginia Beach planning to exact revenge on an individual they believed had killed a friend, but in the end, they did not in fact assault that individual. This offense serves as the basis for (i) Count three of the Indictment, which charges Loc Nguyen and Quach with conspiracy to commit assault with a dangerous weapon in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(6) and (ii) Counts fifteen and sixteen, which charge Quach and Loc Nguyen with using and carrying a firearm during and in relation to a violent crime in violation of 18 U.S.C. §§ 2 and 924(c).

Next, it is also alleged that on March 26, 2001, in Fairfax County, Virginia, Le committed an assault with a dangerous weapon. According to the government, this assault occurred in the course of an incident at the Cafe Dan in Northern Virginia. This offense serves as the basis for (i) Count four, which charges Le with threatening a crime of violence in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(3) and (ii) Count seventeen, which charges Le with using and carrying a firearm during and in relation to a violent crime in violation of 18 U.S.C. §§ 2 and 924(c).

A few weeks later, on April 9, 2001, in Falls Church, Virginia, defendants Le, Nam Nguyen, Nguyen Nguyen, and Vu Hoang Nguyen allegedly conspired and attempted to murder Hoang Trinh, who

---

**3.** Because four of the seven defendants share the surname Nguyen, these four defendants are here referred to by both their forename and surname. Defendants Le, Ho, and Quach are referred to by only their surnames.

OPB members believed had "set up" OPB in a fight with a rival group. These alleged offenses serve as the basis for (i) Count Five, which charges these four defendants with attempted murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(5), (ii) Count six, which charges these four defendants with conspiracy to commit murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(5), (ii) Count nineteen, which charges these four defendants with using and carrying a firearm during and in relation to a violent crime in violation of 18 U.S.C. §§ 2 and 924(c), and (iii) two of the eight racketeering acts that make up the alleged pattern of racketeering activity.

At about the same time in April 2001, in Fairfax County, Virginia, Le and Quach are alleged to have conspired with other unindicted conspirators, including Minh Trieu Tran and Bao Quang Pham, to commit an assault with a dangerous weapon. This offense serves as the basis for (i) Count seven, which charges Le and Quach with conspiracy to commit assault with a dangerous weapon in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(6) and (ii) Counts twenty and twenty-one, which charge Le and Quach, respectively, with using and carrying a firearm during and in relation to a violent crime in violation of 18 U.S.C. §§ 2 and 924(c).

And finally, central to the Indictment is a series of shootings in Falls Church, Virginia on May 13, 2001. On that date, Le allegedly shot four individuals known to be associated with one of OPB's rival gangs— Binh Anh Luu, Long Phi Nguyen, Hoang Anh Tran, and Michael Van Thach—and assaulted another—Chung Nguyen. Two of these individuals—Luu and Long Nguyen—subsequently died. The remaining six defendants each allegedly assisted Le in some manner to escape apprehension by law enforcement authorities after the shootings. More specifically, Ho fled with Le immediately after the shootings, and Loc Nguyen and Quach assisted Le in fleeing to New York City shortly thereafter. These offenses serve as the basis for nine counts of the Indictment: (i) Counts eight and nine, which charge Le with murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1); (ii) Counts ten and eleven, which charge Le with attempted murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5); (iii) Count twelve, which charges Le with assault with a dangerous weapon in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(3); (iv) Count twenty-two, which charges Le with using and carrying a firearm during and in relation to a violent crime in violation of 18 U.S.C. § 924(c); (v) Counts twenty-three and twenty-four, which charge Le with murder in the course of a firearms offense in violation of 18 U.S.C. §§ 924(c)(1) and 924(j); and (vi) Count twenty-five, which charges Loc Nguyen, Ho, Nam Nguyen, Nguyen Nguyen, Vu Nguyen, and Quach as accessories after the fact to Le's criminal violations in violation of 18 U.S.C. § 3. The murders of Luu and Long Nguyen and the attempted murders of Tran and Thach also serve as the basis for four of the racketeering acts that make up the alleged pattern of racketeering activity.

Defendants seek to dismiss thirteen of the twenty-five counts of the Indictment as legally insufficient on four distinct grounds.[4] Thus, at issue here are the following four threshold motions to dismiss:

4. At the hearing on these motions, each defendant was allowed to join his co-defendants' motions to dismiss counts with which that defendant has also been charged.

(1) motion to dismiss counts one and two for failure to allege continuity of, and relationship between, the alleged racketeering acts;

(2) motion to dismiss counts three through twelve and twenty-five for failure to allege with specificity the alleged predicate racketeering acts;

(3) motion to dismiss counts two, three, six, and seven for failure to allege an overt act of the alleged conspiracies; and

(4) motion to dismiss, or in the alternative sever, count twenty-five as unrelated to the other counts of the indictment.

Analysis of defendants' challenges to the Indictment properly begins with a brief review of the settled general principles governing the sufficiency of indictments, after which each dismissal motion is separately addressed.

## II.

■■■ The general principles governing motions to dismiss the indictment are well-settled. Motions to dismiss test whether the indictment sufficiently sets forth the charged offense against the defendants. *See United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); *United States v. Brandon,* 150 F.Supp.2d 883, 884 (E.D.Va.2001).[5] The starting point in assessing the sufficiency of an indictment is Rule 7(c), Fed.R.Crim. P., which states that an indictment need only contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." And settled precedent interpreting this Rule makes clear that an indictment is sufficient if it (i) sets forth the essential elements of the offense, (ii) fairly informs the defendant of the nature of the charges against him so that he may prepare his defense,[6] and (iii) enables the defendant to plead the defense of double jeopardy in a future prosecution for the same offense. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Daniels,* 973 F.2d 272, 274 (4th Cir.1992). Courts reason that an indictment must allege each essential element of the offense to insure that a defendant does not face punishment for a crime except "on a presentment or indictment of a Grand Jury" in violation of his Fifth Amendment right. *See United States v. Vinyard,* 266 F.3d 320, 325 (4th Cir.2001); *United States v. Loayza,* 107 F.3d 257, 260 (4th Cir.1997); *see also* U.S. Const.Amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...."). Thus, it is clear that an indictment that fails to allege each essential element of the offense is plainly insufficient and must be dismissed.[7] But an indictment that is not deficient in this regard may nonetheless fail to provide a defendant with sufficient information to prepare a defense, in which event this

---

5. In the analysis of a motion to dismiss an indictment containing multiple counts, "each count is viewed as a separate indictment for purposes of determining its sufficiency." *See United States v. Smith,* 44 F.3d 1259, 1264 (4th Cir.1995) (citing *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932)). Yet, while each count must stand on its own, incorporated and realleged paragraphs from another count must be considered. *See id.* at 1265.

6. An essential element of the offense is an element "whose specification... is necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *See Brandon,* 150 F.Supp.2d at 884 n. 1 (internal citations omitted).

7. *See, e.g., United States v. Pickett,* 353 F.3d 62, 68 (D.C.Cir.2004) (dismissing the indictment because it failed to allege each essential element of the offense); *Daniels,* 973 F.2d at 275 (same).

deficiency may be remedied through discovery or by requiring the government to file a bill of particulars. *See* Rule 7(f), Fed.R.Crim.P. (stating that a defendant may move for a bill of particulars and the court may direct the government to file a bill of particulars); *United States v. Duncan*, 598 F.2d 839, 848 (4th Cir.1979) (a bill of particulars may be ordered "to apprise the defendant of the charge against him so that the [sic] may prepare his defense"). Importantly, however, an indictment that fails to allege the essential elements of the offense cannot be rescued by a bill of particulars. *United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir.1988) (stating that " 'a bill of particulars cannot save an invalid indictment' ") (citing *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). This is so because the validity of an indictment depends on whether the grand jury has found probable cause as to each element of the offense. *See Loayza*, 107 F.3d at 272; *Hooker*, 841 F.2d at 1230 ("The inclusion of all elements also derives from the Fifth Amendment, which requires that the grand jury have considered and found all elements to be present.").

■ Typically, an *indictment adequately* sets forth the elements of the offense if it tracks the language of the relevant criminal statute provided that that language " 'fully, directly, and expressly, without any uncertainty or ambiguity, set[s] forth all the elements necessary to constitute the offence intended to be punished.' " *See Hamling*, 418 U.S. at 117, 94 S.Ct. 2887 (quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1881)); *Smith*, 44 F.3d at 1264 ("The allegations of an offense are generally sufficient if stated in the words of the statute itself."); *see also United States v. McDonough*, 959 F.2d 1137, 1141 (1st Cir.1992) (holding that an indictment that "track[s] the language of the RICO statute" is sufficient). Importantly, however, a statutory citation, by itself, is insufficient because it "does not ensure that the grand jury has considered and found all essential elements of the offense charged" as required by the Fifth Amendment. *United States v. Pupo*, 841 F.2d 1235, 1239 (4th Cir.1988); *see also Vinyard*, 266 F.3d at 326 ("A mere statutory citation is insufficient precisely because it does not demonstrate whether that Fifth Amendment mandate has been followed.").

■ Nor is it sufficient merely to set forth in general terms the offense elements for this would not ensure that a defendant is adequately informed of the charges against him. To this end, the indictment must also contain a brief statement of the facts and circumstances of the alleged offense. *See Hamling*, 418 U.S. at 117, 94 S.Ct. 2887; *Duncan*, 598 F.2d at 848 ("The basic requirement mandates that each essential element of the offense be alleged together with sufficient additional facts to allow the indictment to be used as proof in bar of a subsequent prosecution for the same offense."). Nonetheless, a court assessing a motion to dismiss must keep in mind that the indictment need not set forth with detail the government's evidence;[8] nor need it enumerate "every possible legal and factual theory of defendants' guilt." *See United States v. American Waste Fibers Co.*, 809 F.2d 1044, 1047 (4th Cir.1987). Thus, where an indictment sets forth the offense elements and includes a brief statement of the facts and circumstances of the offense, but omits

---

**8.** *See Loayza*, 107 F.3d at 261 ("[Defendant] understandably, wants the government to disclose its theory of the case and the supporting evidentiary facts. This is not and never has been required at the indictment stage....' ") (citing *United States v. Arlen*, 947 F.2d 139, 145 (5th Cir.1991)).

certain essential specifics of the offense, dismissal is unwarranted; instead, such an omission, if necessary, is typically and appropriately remedied by discovery or, in some instances, by requiring the government to file a bill of particulars.

It is against these settled general principles that the challenged counts in the Indictment must be measured.

### III.

The first dismissal motion targets counts one and two, which charge Le with violating RICO, in violation of 18 U.S.C. § 1962(c), and conspiring to violate RICO, in violation of 18 U.S.C. § 1962(d). Le and others [9] move to dismiss these counts on the grounds that (i) the Indictment fails to allege that the acts comprising the alleged pattern of racketeering are continuous and related, as Le argue the cases require, and (ii) further, that as a matter of law, the alleged racketeering acts are neither continuous nor related to each other or to the alleged criminal enterprise.

To begin with, it is clear that counts one and two are sufficient because both counts (i) allege each essential element of the charged offense, (ii) track the language of the statute, and (iii) provide Le with sufficient notice of the charged offenses. More specifically, count one plainly alleges each of the five essential elements of a § 1962(c) violation, namely "(1) the existence of an enterprise; (2) the defendant's association with the enterprise; (3) the defendant's participation in the affairs of the enterprise; (4) a pattern of racketeering activity; and (5) the enterprise's effect on interstate or foreign commerce." *Hooker*, 841 F.2d at 1227; *see also* 18 U.S.C. § 1962(c); *Salinas v. United States*, 522 U.S. 52, 62, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). By charging that Le "did unlawfully, willfully, and knowingly conduct and participate, directly and indirectly" in the alleged enterprise "through a pattern of racketeering activity," count one tracks the language of the statute.[10] And, by describing at length the alleged enterprise, the defendants' roles in that enterprise, and the alleged racketeering acts, count one adequately informs Le of the charge against him. Count two also plainly alleges each of the essential elements of a § 1962(d) conspiracy charge, namely (1) the five elements of a § 1962(c) charge set forth above plus (2) an agreement with one or more other persons to engage in racketeering acts. *See* 18 U.S.C. § 1962(d); *Salinas*, 522 U.S. at 64, 118 S.Ct. 469 (holding that § 1962(d) requires allegations that defendant combined or agreed with at least one other, but not that defendant or another committed an overt act in furtherance of the conspiracy).[11] Furthermore, this count, like count one, tracks the language of the relevant statute and incorporates sufficient description of the enterprise to inform Le adequately of the conspiracy charge. In short, both counts are legally sufficient.

Defendants quarrel with this conclusion, arguing that because neither count alleges the continuity of, and relationship

---

**9.** Notwithstanding that they are not charged in these counts of the Indictment, defendants Loc Nguyen and Vu Nguyen, by counsel, nonetheless seek to join in Le's motion.

**10.** 18 U.S.C. § 1962(c) provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts.

**11.** For more discussion regarding whether the indictment must allege an overt act on a § 1962(d) charge, see Part IV, *infra*.

between, the racketeering acts that make up the alleged "pattern of racketeering activity," dismissal is required because continuity and relationship must be proved and hence must be alleged. The short and dispositive answer to this argument is that continuity and relationship of racketeering acts are not essential elements of the charged offenses; it is the "pattern of racketeering activity" that is the essential element of the offenses in these counts. *See Salinas,* 522 U.S. at 64, 118 S.Ct. 469; *Hooker,* 841 F.2d at 1227. Continuity and relationship among the acts in the pattern are merely characteristics of a pattern of racketeering activity, ways in which the pattern may be proved or recognized. As such, continuity and relationship need not be alleged in the Indictment.

Although the Fourth Circuit has not squarely addressed this issue, two other circuits—the Seventh and the Ninth—have done so and reached the same conclusion reached here.[12] These circuits reason, as here, that while a prosecutor must prove both continuity and relationship to prove a pattern of racketeering activity at trial, neither continuity nor relationship are essential elements of the RICO offenses and, therefore, need not be alleged in the indictment. *See id.; see also United States v. Boylan,* 898 F.2d 230, 250 (1st Cir.1990) (finding that "relatedness" and "continuity" are not elements of a RICO offense). No case was cited or found holding that an indictment charging a § 1962 violation must allege continuity and relationship. Instead, the cases cited by Le merely establish that a prosecutor must prove conti-

nuity and relationship at trial, not that continuity and relationship are essential elements of § 1962 that must be alleged in the indictment. *See, e.g., H.J. Inc. v. Northwestern Bell Tel. Co. et al.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (stating that a prosecutor must prove continuity and relationship to show a pattern of racketeering activity); *Daniels,* 973 F.2d at 274 (setting forth general principles). Thus, Seventh and Ninth circuit authority, while not controlling here, provides firm support for the conclusion reached here that these counts of the Indictment, which set forth the elements of the offenses and sufficient facts and circumstances to provide fair notice of the offenses charged, are legally sufficient even though they do not allege continuity and relationship.

 Le next argues unpersuasively that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny, compel a different result. Specifically, Le contends that *Apprendi* requires that every fact that the jury must find beyond a reasonable doubt—including continuity and relationship—must be alleged in the indictment. Yet, neither *Apprendi* nor its progeny in this circuit stand for this proposition. Rather, *Apprendi* holds only that an indictment must allege (i) the essential elements of the charged offense and (ii) any fact, other than a prior conviction, that increases defendant's penalty beyond the prescribed statutory maximum. *See Apprendi,* 530 U.S. at 490, 120

---

**12.** *See United States v. Torres,* 191 F.3d 799, 806–07 (7th Cir.1999) ("Contrary to the defendants' assertions, an indictment does not have to allege continuity, which is not an element of the offense, with particularity."); *United States v. Palumbo Bros., Inc.,* 145 F.3d 850, 878 (7th Cir.1998) ("Although continuity is an element of proof necessary at trial …

we agree that it is not an essential element of a RICO offenses that must be clearly and specifically established in the indictment."); *United States v. Woodman,* 1992 WL 357106 (9th Cir.1992) ("The indictment need not … treat relatedness and continuity or the threat of continuity as separate elements.").

S.Ct. 2348.[13] Authority interpreting *Apprendi* in this circuit stands for precisely this limited proposition, namely that, in addition to the essential elements of an offense, a sentencing factor that increases a defendant's punishment above the statutory maximum "[is] the functional equivalent of [an] element[ ] of the ... offense[ ] and must be charged in the indictment...." *United States v. Higgs,* 353 F.3d 281, 298 (4th Cir.2003); *United States v. Promise,* 255 F.3d 150, 156–57 (4th Cir. 2001) (en banc). No case was cited, nor was any found, that has extended *Apprendi* in the manner Le argues. To accept Le's argument that every fact that must be proved must be included in the Indictment would be a radical and unwarranted departure in the law pertaining to indictments and their contents.

▌ Even though neither continuity nor relationship are essential elements of a RICO offense and thus need not be alleged in the Indictment, the Indictment must nonetheless contain sufficient facts to reflect continuity and relationship because proof of continuity and relationship must be adduced at trial,[14] in part so that RICO is not applied to "isolated or sporadic criminal acts." *United States v. Diaz,* 176 F.3d 52, 93 (2d Cir.1999) (citing *United States v. Indelicato,* 865 F.2d 1370, 1375–76, 1381–

---

13. In *Apprendi,* the defendant was convicted of a firearms violation, a crime with a prescribed statutory maximum of ten years, but received a sentence of twelve years because the crime was found by a judge to have been motivated by racial animus and thus to have violated New Jersey's "hate crime" legislation. *See Apprendi,* 530 U.S. at 470–71, 120 S.Ct. 2348. The Supreme Court held that the finding that the crime was motivated by racial animus must be alleged in the indictment and submitted to the jury because this finding increased *Apprendi's* sentence above the ten-year statutory maximum. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.

14. *See Palumbo Bros., Inc.,* 145 F.3d at 877 ("[T]he indictment must contain sufficient facts to demonstrate that the racketeering acts are related and that those acts establish or threaten continuing criminal activity."); *Woodman,* 1992 WL 357106 (stating that the "indictment [must] allege *facts* sufficient to show that the predicate acts are related and that they pose the threat of continued criminal activity") (emphasis in original); *United States v. Jones,* 2002 U.S. Dist. LEXIS 26136, at *6–7 (D.Conn. October 9, 2002); *United States v. Dote,* 150 F.Supp.2d 935, 940 (N.D.Ill.2001) (finding that the indictment was sufficient because it "allege[d] a sequence of gambling offenses, unfolding over an extended period of time," and that "as individuals were arrested, other members of the enterprise assumed their responsibilities").

While "[t]he circuits have reached varying conclusions regarding what conduct constitutes a 'pattern of racketeering,'" O'Malley, Grenig, & Lee, 2B Federal Jury Practice & Instructions 81 (5th ed.2000), both the Supreme Court and the Fourth Circuit have made clear that a "pattern" requires a showing of both continuity and relationship at trial. *See H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. 2893; *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1135 (4th Cir.1993); *see also United States v. Starrett,* 55 F.3d 1525, 1543 (11th Cir.1995). A frequently used jury instruction defining a "pattern of racketeering activity" for a § 1962 charge provides as follows:

In order to establish a "pattern of racketeering activity" as alleged in Count ___ of the indictment, the government must prove beyond a reasonable doubt that:

One, at least two acts of racketeering, as detailed in the indictment, were committed within ten (10) years of each other;

Two, the racketeering acts had the same or similar purposes, results, participants, victim or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events;

Three, the racketeering acts themselves constitute a threat of continued activity. This threat of continued activity may be established when the evidence shows that the racketeering acts are part of a long-term association that exists for criminal purposes or when the racketeering acts are shown to be a regular way of conducting a defendant's ongoing legitimate business or enterprise.

O'Malley, Grenig, & Lee, *supra,* at 80.

82 (2d Cir.1989)). Thus, Le argues that even assuming *arguendo* that the Indictment need not allege continuity and relationship, the Indictment must be dismissed because it does not allege facts sufficient to show continuity and relationship.

This argument is rebutted by the Indictment itself, which alleges eight racketeering acts perpetrated by Le and other OPB members in Virginia and Maryland between October 2000 and May 2001. These acts are clearly related to one another because they (i) took place over a relatively short period of time, (ii) involved common participants, namely Le and other OPB members, and (iii) served similar purposes, namely the enhancement of the alleged OPB criminal enterprise and the enrichment of its members. *See H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. 2893 (citing 18 U.S.C. § 3575 for the principle that criminal acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events"); *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 182 (4th Cir.2002) (same); *Anderson v. Foundation for Advancement, Educ., and Emp. of Amer. Indians*, 155 F.3d 500, 505–06 (4th Cir.1998) (same). Furthermore, while these acts did not occur over an extended period of time,[15] they are nonetheless continuous because they, and the other criminal acts alleged in the indictment,[16] impose a clear threat of repetition in the future. *See H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. 2893 (" 'Continuity' is both a closed– and open-ended concept,

referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."). They are quite clearly part of a "prolonged criminal endeavor." *ePlus Tech., Inc.*, 313 F.3d at 182.

In sum, counts one and two are legally sufficient (i) because continuity and relationship are not essential elements of a RICO offense and thus need not be alleged in the Indictment, (ii) because the facts alleged reflect that the acts constituting the alleged pattern of racketeering activity are related and continuous, and (iii) because the counts include all the offense elements and sufficient facts and circumstances to provide Le with fair notice of the charges. Thus, Le's motion to dismiss counts one and two must be denied.

## IV.

■■■ Next, defendants attack the eleven counts that charge criminal acts "in aid of racketeering." Counts three through twelve each charge one or more defendants with the commission of a violent crime "in aid of racketeering" in violation of 18 U.S.C. § 1959(a)(1)—(6). Count twenty-five charges six defendants as accessories after the fact to crimes committed against the United States—namely, three violent crimes committed by Le "in aid of racketeering"—in violation of 18 U.S.C. § 3. For counts three through twelve, the Indictment alleges, as the statute requires, that the six charged defendants engaged in at least one predicate racketeering offense.[17] For example,

---

**15.** *See ePlus Tech., Inc.*, 313 F.3d at 182 (finding that the predicate racketeering acts were not continuous in part because they did not occur over an extended period of time).

**16.** *See Palumbo Bros., Inc.*, 145 F.3d at 878 (stating that a finding of continuity may be based on a reading of the indictment as a

whole, including any external factual allegations).

**17.** To clarify, every alleged § 1959 offense is in essence composed of two parts: (i) the violent crime in aid of racketeering and (ii) the predicate racketeering activity. Thus, for example, count three charges defendants Loc

count three, which charges that Loc Nguyen and Quach conspired to commit assault with a dangerous weapon in aid of racketeering, alleges that "OPB, through its members and associates, engaged in racketeering activity, that is, robbery in violation of Sections 3–402 and 3–404 of the Maryland Code, Criminal Law, and Sections 18.2–18, 18.2–22, and 18.2–58 of the Code of Virginia." Indictment, p. 14. For count twenty-five, however, the Indictment realleges and incorporates by reference predicate racketeering offenses to Le's crimes from other counts of the Indictment. Yet, while each of these counts identifies a predicate racketeering activity as well as the state statute that activity violated, defendants argue they are legally insufficient because none of the counts sets forth with specificity the predicate offenses, nor do they incorporate the elements or details of these offenses from elsewhere in the Indictment.[18]

■■■ The general principles elucidated in Part II herein point persuasively to the conclusion that these counts of the Indictment need not allege with specificity the predicate racketeering offenses and thus defendants' motions to dismiss must be denied. Each challenged count is plainly sufficient because it (i) sets forth each of the essential elements of the offense, (ii)

tracks the language of the statute, and (iii) provides defendants adequate notice of the charges brought against them. *See Hamling,* 418 U.S. at 117, 94 S.Ct. 2887; *Daniels,* 973 F.2d at 274. More specifically, counts three through twelve allege, either directly or by incorporation, each of the essential elements of a § 1959 offense, namely "(1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise." *United States v. Fiel,* 35 F.3d 997, 1003 (4th Cir.1994) (citing *United States v. Concepcion,* 983 F.2d 369, 381 (2d Cir. 1992)); *see also United States v. Rahman,* 189 F.3d 88, 126 (2d Cir.1999) (same). By (i) alleging that the charged defendants committed the violent crime "for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity" and (ii) setting forth the alleged violent crime and the state law that crime violated, counts three through twelve also track the language of the statute.[19] Count twenty-five also alleges each essential element of a

Nguyen and Quach with conspiracy to commit assault with a dangerous weapon in aid of racketeering activity. The alleged violent crime in aid of racketeering activity is the conspiracy to commit assault with a dangerous weapon. The predicate racketeering activity, also alleged in the Indictment is a robbery committed by OPB members in violation of state law.

18. Defendant Quach, by counsel, also moves to dismiss counts fifteen and twenty-one on the same ground, namely that these counts fail to allege the nature of the predicate racketeering offenses. Yet, this argument is irrelevant to these counts because they do not charge Quach with a crime in aid of racke-

teering, but rather charge him with using an carrying a firearm during a violent crime in violation of 18 U.S.C. §§ 2 and 924(c).

19. 18 U.S.C. § 1959 provides as follows:

Whoever ... for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished....

§ 3 offense, namely "(1) the commission of an underlying offense against the United States, [in this instance, violations by Le of § 1959,] (2) the defendant's knowledge of that offense, and (3) assistance by the defendant in order to prevent the apprehension, trial, or punishment of the offender." *United States v. Osborn*, 120 F.3d 59, 63 (7th Cir.1997); *United States v. Innie*, 7 F.3d 840, 850 (9th Cir.1993). By alleging that the charged defendants, "knowing that offenses against the United States had been committed" by Le, "did receive, relieve, comfort and assist the offender, Cuong Gia Le, in order to hinder or prevent the offender's apprehension, trial, and punishment," count twenty-five clearly tracks the language of 18 U.S.C. § 3, the charging statute.[20] Notably, neither the elements nor the details of the predicate racketeering offenses are essential elements of (i) a § 1959 charge or (ii) a § 3 charge, where the underlying offense in the § 3 accessory charge is a § 1959 offense. Thus, these elements and details need not be specifically alleged in these counts. Therefore, for these reasons, because each count includes a brief statement of the date and location of the charged offense, and because the Indictment as a whole provides extensive information regarding the nature and activities of OPB and each defendants' distinct role thereby notifying defendants of the charges they face,[21] defendants' motions to dismiss these counts must be denied.[22] *See Hamling*, 418 U.S. at 117, 94 S.Ct. 2887; *Daniels*, 973 F.2d at 274.

While no authority was cited or found squarely addressing whether an indictment charging a violation 18 U.S.C. § 1959 must allege the elements and specifics of the alleged predicate racketeering acts, the general principles elucidated in Part II confirm the legal adequacy of the counts charging crimes in aid of racketeering. But in addition to these settled general principles, there is analogous supporting authority. For example, in *United States v. Smith*, 44 F.3d 1259 (4th Cir.1995), the Fourth Circuit denied a defendant's motion to dismiss five counts of an indictment charging him with money laundering, in violation of 18 U.S.C. § 1957,[23] even though the indictment failed to allege with

**20.** 18 U.S.C. § 3 provides as follows:

Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

**21.** *See Loayza*, 107 F.3d at 261–62 (considering the indictment "taken as a whole" to determine whether the defendant was adequately apprised of the charges against him); *Concepcion v. United States*, 181 F.Supp.2d 206, 236 (E.D.N.Y.2002) (considering the indictment "as a whole" when determining sufficiency on a motion to dismiss).

**22.** Yet, it is important note that even though the Indictment need not contain specific allegations concerning the predicate racketeering offenses, the government nonetheless must prove at trial that members of OPB, the alleged criminal enterprise, in fact engaged in predicate racketeering acts. Notably, the jury will be instructed that they may not find defendants guilty on counts three through twelve or count twenty-five unless it finds that members of OPB committed predicate racketeering acts. *See United States v. Phillips*, 239 F.3d 829, 845 (7th Cir.2001) (stating that the basic jury instruction required a finding that the alleged criminal enterprise engaged in racketeering activity); *United States v. Feliciano*, 223 F.3d 102, 113 (2d Cir.2000) (stating that the jury was instructed that "[t]he second element that the government must prove beyond a reasonable doubt is that Los Solidos engaged in racketeering activities....").

**23.** Section 1957 prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957.

specificity the predicate wire fraud offense to the money laundering charge. *See id.* at 1264–65. Specifically, count nine of the indictment in *Smith* alleged that defendant's laundered proceeds derived from "specified unlawful activity" that violated the wire fraud statute, 18 U.S.C. § 1343, but did not allege the elements or details of the predicate wire fraud offense. *See Smith*, 44 F.3d at 1265. Defendant there sought dismissal on this ground and the Fourth Circuit rejected this argument, holding that "[j]ust because the statute requires that funds be obtained from '*specified*' unlawful activity does not mean that the government is required to detail the circumstances of the unlawful activity." *Id.* Instead, the court found that the indictment was sufficient because it (i) alleged that defendant engaged in the predicate offense and (ii) identified the predicate statute violated. *See id.* The court reasoned that these allegations were sufficient because "[t]he core of money laundering . . . is the laundering transaction itself" and not the predicate "specified unlawful activity" from which the laundered funds were derived. *See id.* Moreover, the court found that the indictment provided the defendant with adequate notice of the charges and enabled the defendant to plead a double jeopardy defense in a later prosecution. *See id.* at 1264. Thus, while *Smith* did not involve § 1959, it nonetheless is analogous and points persuasively to the conclusion that the instant Indict-

ment need not allege with specificity the predicate racketeering offenses. Further support for the result reached here is authority from other circuits holding that an indictment under 18 U.S.C. § 1962(d), the RICO conspiracy statute, need not allege with specificity the predicate racketeering offenses composing the pattern of racketeering activity, but instead need only allege that defendant engaged in a pattern of racketeering activity.[24] The Seventh Circuit explained its conclusion in this regard by noting that the predicate acts need not be alleged because they are not elements of the RICO offense. *See Glecier*, 923 F.2d at 500. This supports the conclusion that an indictment charging a § 1959 offense need not allege the elements and specifics of the predicate racketeering acts.

Defendants seek to avoid this conclusion on two distinct grounds. As above, defendants again argue unpersuasively that *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, compels a different result. Yet, the Supreme Court made clear that *Apprendi's* holding is limited; it held that an essential element of an offense or fact, other than a prior conviction, that will increase a defendant's penalty above the statutory maximum must be alleged in the indictment and found by a jury beyond a reasonable doubt. *See id.* at 490, 120 S.Ct. 2348. Neither *Apprendi* nor its progeny in this circuit provide any support for defendants' contention that any fact that must be

**24.** *See United States v. Crockett*, 979 F.2d 1204, 1209 (7th Cir.1992) (holding that the indictment need not allege with specificity the predicate bribery offenses to a RICO charge); *United States v. Glecier*, 923 F.2d 496, 500 (7th Cir.1991) ("Neither overt acts nor specific predicate acts that the defendant agreed personally to commit need be alleged or proved for a section 1962(d) offense."); *United States v. Phillips*, 874 F.2d 123, 128 n. 4 (3d Cir.1989) ("We were initially troubled by the sufficiency of Count I of the indictment

because of its failure to specify, with particularity, which acts of bribery and extortion appellants allegedly agreed to commit. However, Count I charges the elements of a RICO conspiracy. . . ."); *see also United States v. Sutherland*, 656 F.2d 1181, 1197 (5th Cir. 1981) (rejecting challenge to RICO conspiracy indictment where indictment identified the pattern of racketeering activity as "a number of bribes that occurred between November 1975 and January 1980" but failed to quote the Texas bribery statute).

found by a jury, regardless of its impact on defendant's penalty, must be alleged in the indictment. *See id.; Higgs,* 353 F.3d at 298; *Promise,* 255 F.3d at 156–57. As noted previously, to hold otherwise would mark a radical and unwarranted departure in the law.

Similarly unpersuasive is defendants' reliance on *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), to support its argument that the Indictment must allege the predicate racketeering offenses. In *Dixon,* the Supreme Court held that a defendant who had been convicted and punished for violating a criminal contempt statute for distributing drugs while on bail could not then, pursuant the Double Jeopardy Clause, be tried for the drug distribution charge. In reaching this conclusion, the Supreme Court (i) affirmed the *Blockburger* "same elements" test to determine whether a second prosecution is barred by double jeopardy and (ii) overruled the *Grady* "same conduct" test. *See id.* at 703–05, 113 S.Ct. 2849. It is therefore pellucidly clear that *Dixon* did not address or decide whether the predicate activity of an offense must be alleged in an indictment.

 In the alternative to their motions to dismiss, defendants move for a bill of particulars with regard to counts three through twelve and twenty-five so they may be fairly apprised of the charges against them. Rule 7(f), Fed.R.Crim.P., states that a "court may direct the government to file a bill of particulars" upon a defendant's motion. And controlling authority makes clear that the decision to grant or deny a motion for a bill of particulars is within the sound discretion of the trial court. *See Wong Tai v. United States,* 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545 (1927); *United States v. Anderson,* 481 F.2d 685, 690 (4th Cir.1973) ("A motion for a bill of particulars is ad-

dressed to the sound discretion of the trial court. . . . "). Moreover, it is well-settled that a bill of particulars is intended "to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial" and must "not . . . be used to provide a detailed disclosure of the government's evidence in advance of trial." *United States v. Automated Medical Labs., Inc.,* 770 F.2d 399, 405 (4th Cir.1985); *see also Anderson,* 481 F.2d at 690–91. Thus, a court must not direct the government to reveal the details of its evidence or the precise manner in which it will make its proof in a bill of particulars. *See id.; see also United States v. Gabriel,* 715 F.2d 1447, 1449 (10th Cir.1983); *United States v. Hajecate,* 683 F.2d 894, 898 (5th Cir. 1982).

Given these settled principles, defendants' motions for a bill of particulars with respect to all counts must be denied. Each count of the indictment, except count seven, states the nature of the charge, the defendants who have been charged, and the date(s) and location of the alleged offense; thus, these counts sufficiently apprise defendants of the charges against them enabling them to adequately prepare their defenses. *See Automated Medical Labs., Inc.,* 770 F.2d 399. Moreover, while count seven does not state the specific date and identity of any victim of the alleged conspiracy to commit assault, the government has provided discovery with regard to this incident. Specifically, both charged defendants—Le and Quach—have been provided a description of the incident, including its location, and Quach has been provided access to witness interviews. Presumably, this will also be made promptly available to Le's counsel. Moreover, the government represents that all defendants are receiving additional facts regarding this incident through ongoing

discovery. Thus, because it appears that defendants are sufficiently apprised through discovery of the facts and circumstances of the offense and that defendants' motions are in essence an improper request for underlying evidentiary matters, defendants' motions with regard to count seven are also denied.

## V.

Next, defendants challenge the four conspiracy counts. Specifically, count two charges Le with a RICO conspiracy in violation of 18 U.S.C. § 1962(d), while counts three, six, and seven charge one or more defendants with conspiracies to commit various violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959. Defendants seek to dismiss these counts on the ground that they fail to allege an overt act committed in furtherance of the alleged conspiracies and thus are insufficient.

■ In *Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), the Supreme Court held that § 1962(d), unlike the general federal conspiracy statute, 18 U.S.C. § 371, does not require proof of an overt act in furtherance of the conspiracy. *See id.* at 63, 118 S.Ct. 469 ("There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes...."); *see also Glecier,* 923 F.2d at 500 ("Neither overt acts, *United States v. Torres Lopez,* 851 F.2d 520, 525 (1st Cir. 1988), nor specific predicate acts that the defendant agreed personally to commit, [*U.S. v.*] *Neapolitan,* 791 F.2d [489] at 495–98 [(7th Cir.1986)], need be alleged or proved for a section 1962(d) offense."). Thus, count two need not allege that Le committed an overt act in furtherance of the RICO conspiracy and Le's motion to dismiss count two on this ground must be denied.

Yet, *Salinas* did not address whether a conspiracy charge pursuant to § 1959 requires proof of an overt act in furtherance of the alleged conspiracy and thus whether an overt act must be alleged in the indictment. Here, the government argues that because § 1959 contains no overt act requirement, proof of an overt act is not required for this offense and thus need not be alleged in the Indictment. In support of this contention, the government cites *United States v. Shabani,* 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994), in which the Supreme Court held that proof of an overt act is not required under 21 U.S.C. § 846 because "[t]he language of neither version [of the statute] requires that an overt act be committed to further the conspiracy" and the common law understanding of conspiracy does not require proof of an overt act. *Shabani,* 513 U.S. at 13–14, 115 S.Ct. 382. Further, the government properly distinguishes *United States v. Hayes,* 775 F.2d 1279, 1282 (4th Cir.1985), in which the Fourth Circuit held that "the indictment is defective for failure to allege a subsequent overt act in furtherance of the unlawful activity" on a charge of violating 18 U.S.C. § 1952(a), on the ground that § 1952, unlike § 1959, explicitly requires proof of an overt act. *Hayes,* 775 F.2d at 1282.

While the plain language of § 1959 does not require proof of an overt act, it is not clear that this ends the analysis with regard to the sufficiency of the Indictment, as defendants argue that the statute nonetheless incorporates the elements of a generic state law conspiracy offense, which requires proof of an overt act. In support of this argument, defendants point to the language of the statute:

Whoever... for the purpose of gaining entrance or maintaining or increasing

position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence *against any individual in violation of the laws of any State* or the United States, or attempts or conspires so to do, shall be punished . . . .

18 U.S.C. § 1959 (emphasis added).

■ Defendants' contention raises several questions not yet resolved in this circuit, namely (i) whether § 1959, which punishes violent crimes that violate "the laws of any State or the United States" and are committed in aid of racketeering, incorporates state law with regard to attempts and conspiracies to commit these violent crimes,[25] (ii) in the event § 1959 incorporates state law with regard to conspiracy offenses, whether the statute incorporates the laws of the state where the alleged offense was committed, in this case

Virginia and Maryland, or instead state law in general, and (iii) whether, if an overt act must be proved, it must also be alleged in the indictment. By its terms, § 1959 makes clear that the first question must be answered in the affirmative. Thus, § 1959 explicitly punishes not just those who commit the proscribed acts "in violation of the laws of any State or the United States," but also those who "attempt[ ] or conspire[ ] so to do."[26] It is apparent, therefore, that § 1959 incorporates state law with respect to conspiracies and attempts, as well. Next, the second question need not be specifically decided here because neither Virginia nor Maryland law, nor state law in general, requires proof an overt act on a conspiracy charge.[27] Thus, the same result obtains regardless of whether the statute incorporates the state law where the offense occurred or instead generic state law.[28] As a consequence, an overt act need not be alleged in the Indictment and the third

---

**25.** *See United States v. Desena,* 287 F.3d 170, 177 (2d Cir.2002) ("Although the government may rely on either state or federal law to establish a predicate *substantive* crime, it is unclear whether § 1959 imports state law of *attempt and conspiracy* or whether federal law governs.") (emphasis in original).

**26.** 18 U.S.C. § 1959 (emphasis added).

**27.** *See United States v. Orena,* 32 F.3d 704, 714 (2d Cir.1994) (stating that the "generic definition" of a conspiracy offense does not require proof of an overt act); *Birchead v. State,* 317 Md. 691, 707, 566 A.2d 488 (1989) (" 'The crime [of conspiracy] is complete without any overt act . . . .' ") (citing *Gardner v. State,* 286 Md. 520, 523–24, 408 A.2d 1317 (1979)); *Gray v. Commonwealth of Virginia,* 260 Va. 675, 680, 537 S.E.2d 862 (2000) ("In Virginia, the crime of conspiracy is complete when the parties agree to commit an offense. . . . No overt act in furtherance of the underlying crime is necessary.") (internal citations omitted); 16 Am.Jur.2d *Conspiracy* § 15 ("At common law a criminal conspiracy was completed when the agreement was

made, and an overt act was not a necessary incident of the crime.").

**28.** Notably, the only circuit to have addressed these questions—the Second Circuit—held (i) that RICO was not intended to incorporate the elements of the state law offenses where the offense occurred, but "only to provide general substantive frames of reference," *United States v. Miller,* 116 F.3d 641, 675 (2d Cir.1997), and (ii) that the government need not prove an overt act for a conspiracy charge under § 1959. *See Diaz,* 176 F.3d at 96; *Orena,* 32 F.3d at 713–14. Although defendant is correct that the Second Circuit has more recently questioned its holdings in *Diaz* and *Orena,* it has not overturned these holdings. *See United States v. Carrillo,* 229 F.3d 177, 185 (2d Cir.2000) ("We recognize that we stated in *Diaz* that in applying VICAR to a conspiracy to assault, that the government [was] not required to prove an overt act under Connecticut law . . . . We have serious doubts, however, whether that assertion can stand the test of time.") (internal quotations and citations omitted).

question similarly is never reached. Moreover, there is simply no warrant in the statute nor reason in principle to support defendants' contention that an overt act must be alleged because the statute incorporates the rule in the majority of states. Surely, Congress did not intend that an indictment pleading requirement depend upon a tally of state rules, a tally that, as history shows, changes unpredictably over time.

## VI.

■ Defendants also seek to dismiss, or in the alternative, sever count twenty-five of the Indictment, which charges Loc Nguyen, Ho, Nam Nguyen, Nguyen Nguyen, Vu Nguyen, and Quach as accessories after the fact to three crimes of violence, namely murder, attempted murder, and assault with a dangerous weapon, committed by Le in aid of racketeering, pursuant to 18 U.S.C. § 3, on the ground that this count is not sufficiently related to the other counts of the Indictment.

The starting point in the analysis of defendants' motions to dismiss or sever count twenty-five is Rule 8(a), Fed.R.Crim. P., which provides that a single indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged ... are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Rule 8(a), Fed.R.Crim.P. Nonetheless, Rule 14, Fed.R.Crim.P., recognizes that severance is required in certain cir-

cumstances when joinder unfairly prejudices a defendant. *See* Rule 14, Fed. R.Crim. P;[29] *see also United States v. Mackins*, 315 F.3d 399, 412–13 (4th Cir. 2003); *United States v. Gray*, 78 F.Supp.2d 524, 531 (E.D.Va.1999). Yet, there is no doubt here that the accessory after the fact charge is part of the same common scheme or plan as the other counts of the Indictment, namely, the OPB criminal enterprise. This conclusion is inescapable given that Le is charged with the crimes to which the other six defendants allegedly acted as accessories in counts eight through twelve of the Indictment. Nor does the joinder of the accessory charge unfairly prejudice defendants because the jury will be properly instructed that it must consider each count and defendant separately. *See Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (stating that the jury was properly instructed to " 'give separate consideration to each individual defendant and to each separate charge against him' ") (quoting *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960)). Thus, count twenty-five is sufficiently related to the other counts of the Indictment and defendants' motion to dismiss or, in the alternative, sever pursuant to Rules 8 and 14, Fed. R.Crim.P., must be denied.[30] *See, e.g., United States v. Balzano*, 916 F.2d 1273, 1280 (7th Cir.1990) (finding that witness intimidation count was sufficiently related to extortion and conspiracy counts to warrant joinder because the witness intimi-

---

**29.** Rule 14, Fed.R.Crim.P., provides that:
If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whether other relief justice requires.

**30.** Not addressed here is the question whether severance may be required pursuant to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny. This issue remains under active consideration.

dation count was "clearly part and parcel of the same criminal scheme").

▮ Defendant Quach, by counsel, argues that count twenty-five must nonetheless be dismissed on other grounds. Specifically, Quach challenges a minor amendment to count twenty-five and argues that this count must be dismissed because the amendment improperly transformed count twenty-five from a count that did not state an offense to one that did. *See United States v. Coward*, 669 F.2d 180, 184 (4th Cir.1982). After a hearing on these matters and apparently in response to a defense argument, count twenty-five was amended in the Fourth Superseding Indictment so that it now realleges and incorporates by reference counts eight, nine, ten, eleven, and twelve, the counts that set forth Le's § 1959 offenses, the offenses to which the defendants charged in count twenty-five allegedly acted as accessories.[31] While Quach is correct that "an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form,"[32] Quach's challenge to the amendment at issue fails because this is precisely what occurred here: the Fourth Superseding Indictment was in fact resubmitted to the grand jury for its consideration of this amendment.

Appropriate orders with regard to defendants' motions to dismiss and for a bill of particulars have issued.[33] An appropriate order with regard to defendants' motions to dismiss counts two, three, six, and seven because the Indictment fails to allege overt act(s) in furtherance of the alleged conspiracies will issue.

---

**31.** In the Third Superseding Indictment, count twenty-five charges that:

> In or about May 2001, the defendants LOC TIEN NGUYEN, PHU VAN HO, NAM NGUYEN, NGUYEN NGUYEN, VU HOANG NGUYEN, and KY TRUONG QUACH, knowing that offenses against the United States had been committed, to wit: murder, attempted murder, and assault with a dangerous weapon, all in aid of racketeering activity in violation of Title 18, United States Code, Section 1959, did receive, relieve, comfort and assist the offense, Cuong Gia Le, in order to hinder and prevent the offender's apprehension, trial and punishment.

This count was amended in the Fourth Superseding Indictment to add the words "as set forth in Counts Eight, Nine, Ten, Eleven, and Twelve of this Indictment, which are realleged and incorporated by reference herein" after the citation to § 1959.

**32.** *Russell*, 369 U.S. at 770, 82 S.Ct. 1038 (citing *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887)); *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (same); *United States v. Bereano*, 1998 U.S.App. LEXIS 21131 (4th Cir.1998) (stating that a court may permit a change to an indictment when the change is " 'merely a matter of form,' such as ... an inconsistency amounting to a simple matter of semantics").

**33.** *See United States v. Cuong Gia Le, et al.*, 306 F.Supp.2d 589 (E.D.Va.2004) (Order) (denying defendants' motions for bills of particulars); *United States v. Cuong Gia Le, et al.*, Criminal Action No. 03–48–A (E.D.Va. March 4, 2004) (Order) (denying defendants' motions to dismiss certain counts of the indictment, but deferring ruling pending further submissions with regard to the indictment's allegations concerning overt acts on conspiracy counts); *United States v. Cuong Gia Le, et al.*, Criminal Action No. 03–48–A (E.D.Va. March 4, 2004) (Order) (denying defendant Vu Nguyen's motion to sever count twenty-five on the ground that it is unrelated).