UNITED STATES, Plaintiff,

v.

Loc Tien NGUYEN Defendant.

No. CRIM. 03–48–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 8, 2004.

James Trump, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Marvin Miller, Esquire, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue here in this multi-count RICO[1] prosecution of seven defendants is the claim by one defendant that his statements to law enforcement officers must be suppressed pursuant to (i) *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny, (ii) the Sixth Amendment, or (iii) Rule 5(a), Fed.R.Crim.P., and the corollary *McNabb–Mallory* rule.

### I.

Defendant Loc Tien Nguyen stands charged in three counts of a twenty-five count RICO Superseding Indictment,[2] including (i) conspiracy to commit assault with a dangerous weapon in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(6), (ii) using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 2, 924(c), and (iii) accessory after the fact to murder in violation of 18 U.S.C. § 3. According to the Superseding Indictment, Nguyen was an active member of a criminal enterprise known as the "Oriental Playboys" or "OPB," a Vietnamese youth gang that engaged in various crimes including burglary, robbery, drug distribution, assault, and murder in Virginia, Maryland, and elsewhere. Co-defendant Cuong Gia Le is charged with two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) and two counts of murder in the course of a firearms offense in violation of 18 U.S.C. § 924(j). These charges grow out of an incident at the Majestic Restaurant in Falls Church, Virginia on May 13, 2001, in which Le allegedly shot and killed two members of a rival criminal organization. Nguyen is charged as an accessory after the fact because he allegedly aided Le's flight from these murders.

---

1. Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. § 1961 *et seq.*

2. There have been five indictments in this case, the latest denominated the Fourth Superseding Indictment, which is referred to here simply as the "Superseding Indictment." For a description of each of the indictments, see *United States v. Cuong Gia Le, et al.,* 2004 WL 609299, at *13 n. 2, 2004 U.S. Dist. LEXIS 4972, at *3 n. 2 (E.D.Va. March 24, 2004).

Nguyen now seeks to suppress two statements he made to law enforcement officers on the grounds that the statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny, or, in the alternative, were involuntary. He also seeks to suppress the second statement pursuant to Rule 5(a), Fed. R.Crim.P., and the corollary *McNabb–Mallory* rule on the ground that the statement was obtained during a period of unnecessary delay between the return of defendant's indictment and his arraignment. An evidentiary hearing on the suppression motion was held during which one witness—Loren Hatcher—testified for the defendant[3] and three witnesses—(i) Detective–Sergeant Edgar Lancaster of the Falls Church Police Department, (ii) Detective Irene Boyle of the Fairfax County Police Department,[4] and (iii) Detective Rob Grims of the Montgomery County, Maryland Police Department—testified for the government. The relevant facts—stated here as required by Rule 12, Fed.R.Crim. P.—are based on the testimonial and documentary evidence presented. *See* Rule 12, Fed.R.Crim.P. ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record.").

### a. *May 15, 2001 Interview*

On May 14, 2001, two days after the Majestic murders, Detective–Sergeant Edgar Lancaster, a twenty-two year veteran detective of the Falls Church Police Department and a deputized member of the Federal Bureau of Investigation's Asian Organized Crime Task Force, called Nguyen by telephone and left a message requesting an opportunity to speak to him regarding his knowledge of the circumstances surrounding the murders. Later that evening, Nguyen returned Detective Lancaster's call and agreed to meet him at 12:30 p.m. on May 15, 2001 on a street corner in Springfield, Virginia near Nguyen's home. Detective Lancaster met Nguyen the following day on the designated street corner and the two engaged in a brief conversation. Although Detective Lancaster conducted a pat down search of Nguyen prior to the conversation, Detective Lancaster was not in uniform, was not driving a marked police vehicle, and did not handcuff Nguyen, arrest him, or brandish a weapon. During the course of the conversation, Nguyen agreed to ac-

---

**3.** Hatcher's testimony was not in fact relevant to the circumstances surrounding Nguyen's interviews and statements. Rather, Hatcher, who was working as a private security officer at the Majestic Restaurant on May 13, 2001, the night of the shootings, testified that he heard the shots fired by Le and soon thereafter saw Nguyen drive away from the restaurant with two other individuals.

**4.** The government initially offered the testimony of Detective Lancaster. Yet, because Detective Lancaster was not present for thirty to forty-five minutes of the May 15, 2001 interview, the government requested permission to present additional testimony, namely the testimony of Detectives Boyle and Grims. This request was granted. Thereafter, Nguyen, by counsel, objected to the ruling permitting the government to present additional

testimony on the ground that the additional witnesses had not been sequestered. This objection was overruled on the ground that Nguyen's barebones motion to suppress did not comply with (i) Rule 47, Fed.R.Crim.P., requiring that "[a] motion must state the grounds on which it is based," (ii) Local Rule 7(A) requiring that "[a]ll motions shall state with particularity the grounds therefor...", and (iii) Local Rule 7(F)(1) requiring that "[a]ll motions ... shall be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons...." As a consequence, the government did not have sufficient notice prior to the hearing of Nguyen's grounds for suppression. *See generally United States v. Gallop*, 838 F.2d 105, 108 (4th Cir.1988) (stating that courts have "inherent power to control the administration of justice").

company Detective Lancaster to the office of the Criminal Investigations Bureau of the Fairfax County Police Department to be interviewed. On the way to the police department, Detective Lancaster and Nguyen did not discuss the Majestic murders.

When Detective Lancaster and Nguyen arrived at the police department, Nguyen agreed to proceed with an interview with Fairfax County Police Detectives Boyle and Chris Flanagan. The interview was subsequently conducted in an interview room on the eighth floor of the police department. Whereas Detective Lancaster was present for all but thirty to forty-five minutes of the three hour interview, Detectives Boyle and Flanagan remained in the interview room for the duration of the interview with the exception of a few short breaks during which Nguyen remained in the room by himself. At Nguyen's request, the interview was not audiotaped. Both Detectives Lancaster and Boyle reported that Nguyen responded to their questions in a manner that clearly reflected that he had no difficulty understanding English.

Nguyen was not placed under arrest by any of the detectives at any time during the course of the interview. Nor did any of the detectives exert force, make threats or promises with regard to future charges, or brandish weapons. Moreover, Nguyen was not denied access to an attorney or freedom to discontinue the interview at any time. In fact, partway through the interview, Nguyen was permitted, upon his request, to use the restroom located in the lobby of the police department unaccompanied by the detectives. Detectives Boyle and Lancaster testified that Nguyen remained calm and cooperative throughout the duration of the interview and agreed to future cooperation. At the conclusion of the interview, Detective Lancaster drove Nguyen home and on the way, the two discussed Nguyen's safety, but not the murders. They also stopped at a McDonald's Restaurant to purchase a soda.

According to Detective Flanagan's report of the interview, set forth in Form 302, Nguyen provided conflicting information regarding the events that occurred on the night of the Majestic murders.[5] At the beginning of the interview, Nguyen stated that he saw Le in the parking lot of the Majestic Restaurant prior to the shootings, but that Le did not at that time have a gun. Nguyen further stated that while he was in the restaurant parking lot he heard gunshots fired inside the restaurant, after which he left the Majestic in a car with Tung Thanh and went to the Galaxy Club. He said he only became aware of Le's involvement in the shooting after watching the news. Yet, Nguyen's story apparently changed as the interview progressed. Thus, later in the interview, he told the detectives that he met Le in the parking lot of the Majestic Restaurant and, after speaking briefly, the two entered the restaurant together. Shortly thereafter, Nguyen said he heard gunshots fired outside the restaurant and after following a crowd into the parking lot, drove away from the restaurant with Le to the Galaxy Club. Accordingly to Nguyen, Le, who appeared nervous, brought a gun into the car and stowed it under the passenger's seat.

The interview recessed briefly while Nguyen used the restroom. After Nguyen returned from the restroom, he provided

---

**5.** Initially, the government made copies of Detective Flanagan's Form 302 report available to Nguyen. At the hearing on this motion, Nguyen, by counsel, requested a copy of Detective Flanagan's notes that were used to prepare the 302 report. While the government objects on the grounds that these notes need not be disclosed under the Jencks Act, 18 U.S.C. § 3500 *et seq.*, the government did permit Nguyen to review a copy of the notes on March 15, 2004.

additional details regarding the murders. Nguyen stated that he arrived at the Majestic with Le and Phu Ho in a car belonging to Trieu. When Nguyen left the restaurant after hearing gunshots in the parking lot, he claimed he saw Le standing in the middle of a crowd of people brandishing a gun in his right hand. Nguyen next stated that Le then shot Long Bao and Kenny Lu. According to Nguyen, he, Le, and Ho, thereafter, drove to the Galaxy Club. Nguyen also told Detective Flanagan that after dropping Nguyen and Ho off at the Galaxy Club, Le left in the same car. Nguyen added that he had not spoken to Le since that time and did not know about his whereabouts.

b. *December 15, 2003 Interview*

On December 15, 2003, Nguyen was again interviewed by Detective Lancaster and Detective Rob Grims of the Montgomery County, Maryland Police Department, also a member of the FBI's Asian Organized Crime Task Force, this time at the Arlington County Police Department, Robbery Section Interview room. At the time of the interview, Nguyen was in custody in the Arlington County Detention Center on another charge. After serving Nguyen a soft drink, the detectives told Nguyen that he and several of his friends, including Le, had been indicted on federal charges, specifically RICO charges in relation to the Majestic shootings, and that the detectives were investigating the case. The detectives showed Nguyen a copy of his arrest warrant, but did not show him a copy of the then sealed indictment or provide details regarding the nature of the charges contained in the indictment.

Before asking him any questions, Detective Grims provided Nguyen a written copy of the FBI standard waiver of rights form and read Nguyen his *Miranda* rights from that form. Nguyen indicated orally that he understood his rights, agreed to proceed with the interview, and did not request an attorney, even though he told Detective Grims that he was already represented by an attorney concerning the Majestic murders.[6] He nonetheless declined, for unstated reasons, to sign the written waiver form. Moreover, Nguyen stated that (i) he did not want to talk about the Le murder investigation and (ii) did not want the detectives to video or audiotape the interview. Detectives Lancaster and Grims agreed to Nguyen's requests and memorialized their agreement with regard to the taping of the interview in writing.

Throughout the interview, Nguyen was coherent and cooperative. At no time did either Detectives Grims or Lancaster use force or make threats or promises regarding the pending charges against Nguyen and other "OPB" members to coerce his cooperation. And, consistent with Nguyen's request, Detectives Grims and Lancaster did not ask Nguyen about the Le murder investigation. Nor did they ask him about any criminal activity that had been specifically charged in the indictment or any indicted co-conspirators. The interview lasted approximately one hour and forty-five minutes. According to Detectives Grims and Lancaster, Nguyen had no difficulty understanding English at any time during the interview. In fact, throughout the interview, his responses made clear that he understood the questions posed.

**6.** Because counsel had not yet been appointed to represent Nguyen on the indicted charges, Nguyen presumably had retained counsel either because he was already aware of the pending indictment or was anticipating the charges against him. Yet, it is also possible that Nguyen, although not yet represented concerning his involvement in the charged offenses here, mistakenly believed he was represented on these charges even though counsel had only been appointed to represent him on other matters.

According to Detective Grims' Form 302 report of the interview, Nguyen provided information regarding the circumstances of five violent crimes, including a murder in Greenbelt, Maryland, all involving rival gang members. When asked what he knew about the murder at the Juliana's nightclub in Greenbelt, Nguyen stated that he was not at the nightclub on the night of the murder, but that he did not wish to continue talking about this murder outside of the presence of his lawyer. Consequently, the detectives abandoned this line of questioning and continued questioning Nguyen on other matters. Nguyen also identified a photograph of Tuan Anh Hoang, who had been arrested for another shooting in Montgomery County, Maryland. Finally, Nguyen stated that Hoang Anh Tran, an individual who had been involved in another shooting, and Tran's brother, had obtained drugs and firearms from friends in Louisiana.

Thus, based on the testimony presented and two Form 302 interview reports, the question is whether *Miranda* or Rule 5(a), Fed.R.Crim.P., and the corollary *McNabb–Mallory* rule bar admission of Nguyen's statements from either of the interviews.[7]

## II.

Well-settled legal principles provide the lens through which these findings must be viewed. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that any statements or confessions made during a custodial police interrogation must be suppressed, unless the individual subject to the interrogation, prior to making the statement, (i) was properly informed of his right to remain silent and right to an attorney and (ii) made a knowing, intelligent, and voluntary waiver of these rights. *Miranda* made clear that this principle applies only when a defendant is "in custody or otherwise deprived of [his] freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602; *see also United States v. Photogrammetric Data Servs., Inc.*, 259 F.3d 229, 240 (4th Cir.2001). Authority interpreting *Miranda* directs courts determining whether an individual is "in custody" for *Miranda* purposes to assess whether "under the totality of the circumstances, the 'suspect's freedom of action is curtailed to a degree associated with formal arrest.'" *United States v. Howard*, 115 F.3d 1151, 1154 (4th Cir.1997) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (citations omitted)). Nor is an arrest a pre-requisite to a finding of custody; even where no formal arrest has occurred, a court must nonetheless consider whether "'a reasonable man in the suspect's position would have understood his situation ... as the functional equivalent of formal arrest.'" *Burket v. Angelone*, 208 F.3d 172, 197 (4th Cir.2000) (quoting *Berkemer*, 468 U.S. at 442, 104 S.Ct. 3138); *see also Howard*, 115 F.3d at 1154 ("The facts in this case fail to support Howard's claim that a reasonable person in his position would have understood that he was in custody."). *Moore v. Ballone*, 658 F.2d 218 (4th Cir.1981), illustrates this point. There, the Fourth Circuit found that the defendant was in custody when he was interrogated by four police officers at the police station for a prolonged period of time during which his requests to go home were denied by the officers and defendant was told numerous times that he would be permitted to go home as soon as he told the officers what happened on the night of

---

**7.** Neither addressed nor decided here is whether Nguyen's statements may be inadmissible for reasons other than those addressed here, including relevancy, Rules 401 & 402, Fed.R.Evid., and his co-defendant's Sixth Amendment confrontation rights. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

the alleged crime for which defendant was a suspect, but had not been arrested. But just as the absence of an arrest does not necessarily mean the absence of custody, it is also true that an individual is not "in custody" simply because he is interrogated at a police station or because he is the focus of a criminal investigation.[8]

Supreme Court authority also makes clear that statements made during a custodial interrogation must be suppressed unless an individual's waiver of his *Miranda* rights is knowing and voluntary. *See Patterson v. Illinois,* 487 U.S. 285, 292, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) ("The question is ... whether the defendant in fact knowingly and voluntarily waived the right delineated in the *Miranda* case."); *United States v. Moreno,* 122 F.Supp.2d 679, 680 (E.D.Va.2000). For a waiver to be valid under this standard, the defendant (i) must be adequately apprised of and understand his *Miranda* rights and the consequences of waiving those rights,[9] *Patterson,* 487 U.S. at 296, 108 S.Ct. 2389, and (ii) must not be threatened, forced, or coerced to waive his rights in any way.[10] Yet, a defendant's waiver need not be express. In fact, a waiver may be written, oral, or "inferred from the actions and words of the person interrogated." *Butler,* 441 U.S. at 373, 99 S.Ct. 1755. Importantly, the Supreme Court has held that an individual's refusal to sign a written waiver form does not preclude a finding of waiver if there are other grounds—such as defendant's oral waiver or indication of willingness to proceed with the interrogation—to conclude that the defendant in fact knowingly and voluntarily waived his rights.[11]

While *Miranda*'s suppression rule only applies to custodial interrogations,[12] Su-

---

**8.** *See Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) ("Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect."); *Beckwith v. United States,* 425 U.S. 341, 345, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (finding that a suspect is not in custody simply because he is the focus of a police investigation); *Howard,* 115 F.3d at 1155 ("The fact that the questioning takes place at a police station is not by itself enough to establish custody so long as the individual being interviewed would perceive that his freedom of movement was not constrained to a degree associated with arrest."); *United States v. Hoye,* 671 F.Supp. 1098, 1103 (E.D.Va.1987) ("Contrary to defendant's claim, custody does not result merely because an individual is the focus of a criminal investigation.").

**9.** Put differently, a waiver is "valid only if it reflects 'an intentional relinquishment or abandonment of a known right or privilege.'" *See Patterson,* 487 U.S. at 292, 108 S.Ct. 2389 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

**10.** *See United States v. Cristobal,* 293 F.3d 134, 139–40 (4th Cir.2002) ("First, the relinquishment of the right 'must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception.'") (quoting *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

**11.** *See Butler,* 441 U.S. at 375–76, 99 S.Ct. 1755; *United States v. Frankson,* 83 F.3d 79, 82 (4th Cir.1996) ("[A] defendant's 'subsequent willingness to answer questions after acknowledging [his] Miranda rights is sufficient to constitute an implied waiver.'") (quoting *United States v. Velasquez,* 626 F.2d 314, 320 (3d Cir.1980)).

**12.** See *United States v. Braxton,* 112 F.3d 777, 783 (4th Cir.1997) ("The Supreme Court has 'stressed that it was the *custodial* nature of the interrogation which triggered the necessity ... of its *Miranda* holding.'" (quoting *Beckwith v. United States,* 425 U.S. at 346, 96 S.Ct. 1612)); *United States v. Wright,* 991 F.2d 1182, 1186 (4th Cir.1993) ("In order for Miranda warnings to be necessary, the defendant must be in a custodial situation, and the statements must be made while the defendant is being interrogated.").

preme Court and Fourth Circuit authority also make clear that, pursuant to the Fifth Amendment's guarantee that "[n]o person... shall be compelled in any criminal case to be a witness against himself... without due process of law,"[13] an individual's statement during a police interrogation, whether custodial or non-custodial, is admissible only if it is "voluntary." *See Miranda*, 384 U.S. at 462, 86 S.Ct. 1602 (citing *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897)); *Photogrammetric Data Servs., Inc.*, 259 F.3d at 240; *Braxton*, 112 F.3d at 780. As a general rule, a statement is not voluntary if it is the result of "coercive police activity;"[14] that is, if it is obtained "'by any sort of threats or violence, ... by any direct or implied promises, however slight, [or] by the exertion of improper influence.'" *Braxton*, 112 F.3d at 780 (quoting *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976)) (alteration in original); *see also Photogrammetric Data Servs., Inc.*, 259 F.3d at 240–41. While a court determining whether a statement was made voluntarily must consider evidence of threats, violence, promises, or other coercive police activity, in the end, the "proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired." *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir.1987) (citations omitted); *see also Braxton*, 112 F.3d at 780; *Photogrammetric Data Services, Inc.*, 259 F.3d at 241. In making this determination, a court must consider the totality of the circumstances, including defendant's characteristics and the nature of the interview.[15] Any statement that the court finds was given freely and voluntarily must not be suppressed. *See Braxton*, 112 F.3d at 781 (citing *Miranda*, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

In sum, based on the principles elucidated above, analysis of Nguyen's motion to dismiss based on *Miranda* and its progeny must address the following three questions: (1) Was Nguyen "in custody" for *Miranda* purposes at each interview? (2) Did Nguyen knowingly and voluntarily waive his *Miranda* rights prior to the custodial interview(s)? (3) Were Nguyen's statements voluntary? Thus, the government has the burden to establish by a preponderance of the evidence that Nguyen's statements are admissible under the general principles elucidated here.[16]

### a. *May 15, 2001 Interview*

■ The evidence presented at the suppression hearing points persuasively to the conclusion that Nguyen was not in custody on May 15, 2001 when he was interviewed

---

13. U.S. Const. Amend. V.

14. *See Braxton*, 112 F.3d at 780 (quoting *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)); *see also Photogrammetric Data Servs., Inc.*, 259 F.3d at 240–41.

15. *See Photogrammetric Data Services, Inc.*, 259 F.3d at 241; *Braxton*, 112 F.3d at 781; *Pelton*, 835 F.2d at 1071 (quoting *United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir.1980)); *United States v. Wright*, 696 F.Supp. 164, 172 (E.D.Va.1988) (finding that defendant's confession was knowingly and voluntarily given because "there was no evidence that any promises or threats were made during Wright's initial questioning"). It is worth noting that courts in this circuit grant motions to suppress statements on the grounds of involuntariness only in rare and exceptional circumstances. *See, e.g., Vance v. Bordenkircher*, 692 F.2d 978, 980–81 (4th Cir. 1982) (refusing to grant motion to suppress confession of fifteen year old defendant with an IQ of 62, moderate mental deficiency, and a mental age of nine).

16. *See United States v. Braxton*, 112 F.3d at 781 ("The Government bears the burden of proving by a preponderance of the evidence that the statement was voluntary.") (citing *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)).

by Detectives Lancaster, Boyle, and Flanagan at the Fairfax County Police Department. Nguyen was not under arrest at the time of the interview, but rather came to the station voluntarily with Detective Lancaster. After Detective Lancaster picked Nguyen up at the location designated by Nguyen, Nguyen rode with Detective Lancaster, who was not in uniform, in the front seat of an unmarked police vehicle to the station. Once at the station, Nguyen was free to end the interview and leave the station at any time. In fact, during the course of the interview he used the restroom in the lobby of the police department unaccompanied and then returned to the interview room. It is thus clear that "under the totality of the circumstances," Nguyen's freedom was not " 'curtailed to a degree associated with formal arrest.' " *Howard,* 115 F.3d at 1154 (citing *Berkemer,* 468 U.S. at 440, 104 S.Ct. 3138 (citations omitted)). That the interview took place at the Fairfax County police station and that the detectives had already been informed that Nguyen was suspected as an accessory after the fact does not compel a different conclusion. Because Nguyen was not in custody, the interrogating officers were not obligated to apprise Nguyen of his *Miranda* rights. *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. Nor, of course, did they need to obtain a waiver of these rights. *See id.*

■ Moreover, the evidence presented by the government makes pellucidly clear that Nguyen's statements were voluntary. Nguyen came to the station with Detective Lancaster voluntarily and chose to stay and continue through the end of the interview even though he was free to leave at any time. Nguyen was not subjected to threats, force, coercion or promises and was not, by nature of his age, intelligence, or lack of education, especially likely to succumb to the detectives' influence. Therefore, there is no doubt that Nguyen maintained his "capacity for self-

determination" throughout the course of the interview and that the "totality of the circumstances" makes clear that Nguyen's statements were voluntary. *See Photogrammetric Data Services, Inc.,* 259 F.3d at 241; *Braxton,* 112 F.3d at 781.

In sum, because the May 15, 2001 interview was non-custodial and because Nguyen's statements during the interview were voluntary, it follows that *Miranda* and its progeny do not bar the admissibility of the statements Nguyen made in the course of this interview.

b. *December 15, 2003 Interview*

The parties do not dispute that Nguyen was in custody at the December 15, 2003 interview as he was then incarcerated in the Arlington County Detention Center on unrelated state charges. *See Mathis v. United States,* 391 U.S. 1, 4–5, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) (holding that a defendant is in custody and *Miranda* applies even when the purpose of defendant's detention is unrelated to the purpose of the interrogation). Thus, Detectives Lancaster and Grims were required, prior to proceeding with the interrogation, to advise Nguyen of his *Miranda* rights. They did so.

■ It is also clear that Nguyen knowingly and voluntarily waived his *Miranda* rights when he orally agreed to proceed with the interview after Detective Grims advised him of his rights, even though he refused to sign the written waiver form. The evidence offered at the suppression hearing shows that Nguyen was adequately informed of his rights and the consequences of his waiver of those rights when Detective Grims read him his rights and provided him with the written form. There is no evidence that Nguyen was threatened, coerced, or unduly influenced to waive his rights, nor any doubt that Nguyen understood his rights. Indeed, so clear was Nguyen as to his rights that he

insisted on carefully defining the boundaries of his waiver. That Nguyen tailored his waiver to exclude any discussion about the Le murder investigation and requested that the detectives put in writing their oral agreement not to tape the interview points even more strongly to the conclusion that Nguyen's waiver was knowing and intelligent. Moreover, that Nguyen indicated that he already had representation concerning the Majestic murders does not compel a different conclusion; Nguyen clearly could have requested that his attorney be present at the interview, but chose not to do so. Importantly, a knowing and voluntary waiver need not also be wise or prudent. In sum, because there is no doubt that Nguyen's waiver and statement were knowing, intelligent, and voluntary, the statement must not be suppressed.

Nguyen seeks to avoid this result by arguing that the statement must be suppressed because Detectives Grims and Lancaster interrogated him about matters related to the Le murder investigation even after Nguyen refused to proceed with questioning on this subject. Nguyen is clearly mistaken in this regard. Detectives Grims' and Lancaster's testimony and Detective Grims' 302 report make clear that the interview did not in fact cover Le or the Majestic murders; nor did it relate specifically to any offenses charged in the pending Superseding Indictment or any indicted conspirators. Therefore, because Nguyen's *Miranda*

waiver did not exclude any subjects other than the Le murder investigation and the interview did not cover this investigation or indeed any other crimes specifically charged in the Superseding Indictment, suppression on this ground is not warranted.[17]

Furthermore, Nguyen contends that his statement must be suppressed because, without the advice of an attorney, he was not fully aware of the consequences of his statements and therefore did not act knowingly and intelligently when he waived his rights. This contention is clearly unavailing. It is well-established that "a full and complete appreciation of all of the consequences flowing from the nature and quality of the evidence in the case" is not a "*sine qua non* for a knowing and voluntary waiver of the right to remain silent...." *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) ("This Court has never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness.") (citing *California v. Beheler*, 463 U.S. 1121, 1125–26 n. 3, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam) and *McMann v. Richardson*, 397 U.S. 759, 769, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Put differently, a defendant's waiver may be knowing and intelligent even if the defendant is not fully aware of the tactical and strategic implications of his decision to proceed with the interrogation.[18] As already noted, a waiver may be

---

17. *See Michigan v. Mosley*, 423 U.S. 96, 105–06, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (stating that a defendant who has refused to proceed with an interrogation on one matter after *Miranda* warnings may nonetheless later be questioned concerning a crime that was not the subject of the earlier interrogation); *United States v. Vasquez*, 476 F.2d 730, 732–33 (5th Cir.1973) ("When a person in custody has responded to proper police interrogation by voicing a general willingness to talk, subject only to a limited desire for silence, and his wishes not to discuss a particular subject

matter are respected, nothing rooted in law or constitutional policy makes it improper to question him as to any unlimited subjects.").

18. *See id.;* LaFave, Israel, & King, 2 Criminal Procedure 586 (2d ed. 1999) ("A waiver may be knowing and intelligent in the sense that there was awareness of the right to remain silent and a decision to forego that right, but yet not knowing and intelligent in the sense that the tactical error of that decision was not perceived.").

knowing and voluntary, even if unwise or imprudent. A contrary conclusion would lead to the unwarranted result that only counseled waivers would be effective. Yet, neither *Miranda* nor its progeny impose this kind of restriction on valid waivers. *See Moran v. Burbine,* 475 U.S. 412, 424–26, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (holding that defendant's waiver was knowing and intelligent even when police withheld information from defendant that his attorney sought to consult with him).

■ Nguyen next argues that even assuming *arguendo* that the admission of the December 15 statement would not violate his Fifth Amendment right to counsel, the statement must nonetheless be suppressed because the government and law enforcement investigators conspired to delay Nguyen's arraignment so that investigators could interview him before he had access to an attorney and full knowledge of the charges against him in the Superseding Indictment and thus violated Nguyen's Sixth Amendment right to counsel.[19] As evidence of the government's and investigators' combined efforts to delay his arraignment, Nguyen points to the government's *ex parte* motion to continue his arraignment from December 12, 2003 to December 19, 2003, fifteen days after the grand jury returned the Superseding Indictment.[20] Nguyen's contention that this

fifteen day delay violated his Sixth Amendment right to counsel is meritless. The government's proffer credibly establishes that it sought to delay the arraignment to enable investigators to coordinate simultaneous arrests of five newly indicted co-defendants during the week of December 15.[21] Although Nguyen was in custody and thus did not present a flight risk, it is reasonable for the government to conclude that arraigning Nguyen prior to the arrest of the indicted co-conspirators would create a risk that others would flee. Thus, given the lack of any credible evidence that the government and investigators conspired to deprive Nguyen of counsel at the interrogation, there is no basis to conclude that Nguyen's Sixth Amendment rights were violated on this ground. Nor is it sensible to conclude that Nguyen's Sixth Amendment rights were violated simply because he might have been more likely to have had counsel at the interrogation had he been arraigned on December 12, 2003, instead of December 19, 2003. This is particularly true given that Nguyen apparently was already represented by counsel concerning the indicted charges and could have requested the presence of his counsel at the December 15 interview.

■ This does not, however, end the Sixth Amendment analysis. Although there is no evidence that the government

---

**19.** Nguyen's Sixth Amendment right to counsel was triggered when he was indicted on December 4, 2003. *See Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (stating that the Sixth Amendment right to counsel arises "at or after the time that judicial proceedings have been initiated... 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment'") (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). The Supreme Court has expressly distinguished the deliberate-elicitation standard which applies when a defendant is interrogated post-indictment and in the absence of counsel from the Fifth Amendment custodial-

interrogation standard. *See Fellers v. United States,* 540 U.S. ——, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004) (citing *United States v. Henry,* 447 U.S. 264, 270, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) and *Michigan v. Jackson,* 475 U.S. 625, 632 n. 5, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986)).

**20.** *See United States v. Cuong Gia Le, et al.,* Criminal No. 03–48–A (E.D.Va. December 9, 2003) (Ex Parte Order).

**21.** Only one of the six charged defendants— Cuong Gia Le—had been charged prior to the return of the Superseding Indictment.

conspired to deprive Nguyen of counsel, the government must still bear the burden of showing, as under the Fifth Amendment analysis, (i) that he was apprised of his right to have counsel appointed and to consult with counsel and (ii) that he knowingly waived that right. *See Patterson v. Illinois,* 487 U.S. 285, 298–99, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) (holding that the same waiver standard applies when assessing whether a defendant has waived his Sixth Amendment right to counsel during a post-indictment interrogation as when assessing whether a defendant has waived his Fifth Amendment right to counsel pre-indictment). In this regard, the evidence makes clear (i) that Detective Grims informed Nguyen about the existence of the Superseding Indictment, (ii) that Detective Grims adequately apprised Nguyen of his *Miranda* rights, including his right to counsel, and (iii) that Nguyen knowingly and voluntarily waived those rights. Thus, pursuant to the standards set out in *Miranda,* and applied to defendant's Sixth Amendment right in *Patterson,* suppression is not warranted.

Nguyen's contention that this analysis is inadequate to protect his Sixth Amendment right to counsel in light of the Supreme Court's recent decision in *Fellers v. United States,* 540 U.S. ——, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004), is unavailing. There, defendant sought to suppress incriminating statements made to police at the jailhouse after a knowing and voluntary waiver because those statements were the fruits of earlier police questioning at defendant's home that violated both the Fifth and Sixth Amendments when (i) plaintiff was interrogated at his home without first being advised of his *Miranda* rights and (ii) the police interrogators "deliberately elicited" post-indictment incriminating statements from defendant at his home outside of the presence of his counsel. *See id.* at 1022. The Supreme Court held that the lower courts erred in concluding that the defendant's initial statements were not made in violation of defendant's Sixth Amendment right and thus "improperly conducted its 'fruits' analysis [with regard to the later jailhouse statements] under the Fifth Amendment." *Id.* at 1023. Thus, the Supreme Court remanded the case to the Eighth Circuit to determine "whether the rationale of [the Fifth Amendment custodial interrogation standard] applies when a suspect makes incriminating statements after a knowing and voluntary waiver of his right to counsel notwithstanding earlier police questioning in violation of Sixth Amendment standards." *Id. Fellers* is quite simply inapposite here. That case involved post-indictment questioning of a defendant in the course of an arrest in violation of that defendant's Fifth and Sixth Amendment rights followed later by a second series of questioning after a waiver. *See id.* at 1021–22. Nothing of the sort occurred here. There was clearly no pre-waiver questioning of Nguyen in violation of his Fifth or Sixth Amendment rights that served as the basis for the December 15 interview. The May 15 interview of Nguyen occurred long before the issuance of an indictment or other process and hence Nguyen's Sixth Amendment right had not yet attached. By contrast, Nguyen's Sixth Amendment right had attached prior to the December 15 interview, but Nguyen knowingly and voluntarily waived this right with certain exceptions, which the detectives honored.

Finally, Nguyen contends that Rule 5(a), Fed.R.Crim.P., which requires that "[a] person making an arrest within the United States . . . take the defendant *without unnecessary delay* before a magistrate judge," compels suppression because there was a fifteen day delay between Nguyen's indictment and his arraignment. Rule 5(a)(1)(A), Fed.R.Crim.P. (emphasis added). Nguyen presumably relies on the

Supreme Court's rulings in *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), which held that an unnecessary delay in arraigning an arrested defendant in violation of Rule 5(a) renders the defendant's statements inadmissible, even if the statements are knowing and voluntary. *See Mallory*, 354 U.S. at 454, 77 S.Ct. 1356; *see also United States v. Schwartz*, 372 F.2d 678, 681–82 (4th Cir.1967) (applying the *McNabb–Mallory* rule). The rationale for the *McNabb–Mallory* rule is two-fold: (i) it ensures that arrested persons are promptly advised of their rights [22] and (ii) it ensures "that arrest, even on probable cause, is not ... [used as] a vehicle for the investigation of crime." LaFave, Israel & King, 2 Criminal Procedure 471 (2d ed.1999). In 1968, Congress enacted 18 U.S.C. § 3501, a provision pertaining to the admissibility of confessions in federal prosecutions, which provides that "a confession ... shall be admissible in evidence if it is voluntarily given," 18 U.S.C. § 3501(a), and sets forth five non-exclusive factors to be taken into consideration by a district court in assessing voluntariness, including "the time elapsing between arrest and arraignment ... if [the confession] was made after arrest and before arraignment." 18 U.S.C. § 3501(b).[23] The circuits are divided on whether § 3501 overruled *McNabb–Mallory*, either in whole or in part,[24] and the Fourth Circuit has yet to resolve this issue. *See United States v. Dickerson*, 166 F.3d 667, 688 n. 19 (4th Cir.1999), *rev'd on other grounds, Dickerson v. U.S.*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (declining to decide the issue). Nor must this issue be decided here because neither *McNabb–Mallory* nor § 3501 compel suppression of Nguyen's statement.

■ Rule 5(a), Fed.R.Crim.P., *McNabb–Mallory*, and § 3501 are exclusively concerned with delays between a defendant's arrest or detention and his arraignment.[25] Nothing in Rule 5(a) or *McNabb–Mallory* concerns delays between a defendant's indictment and his arraignment. And here, Nguyen complains only of the delay between the return of the Superseding Indictment on December 4, 2003 and his arraignment on December 19, 2003. In *United States v. Alvarez–Sanchez*, 511 U.S. 350, 114 S.Ct. 1599, 128 L.Ed.2d 319

**22.** *See Schwartz*, 372 F.2d at 682 (citing *Mallory*, 354 U.S. at 454, 77 S.Ct. 1356).

**23.** The statute also provides a limited "safe harbor" for a voluntary confession made after arrest, but before arraignment, "if such confession was made or given by such person within six hours immediately following his arrest or other detention." 18 U.S.C. § 3501(c).

It is worth noting here that in *Dickerson*, 530 U.S. 428, 120 S.Ct. 2326, the Supreme Court reversed the Fourth Circuit and held that § 3501 declined to overrule *Miranda* on the grounds that "*Miranda* announced a constitutional rule that Congress may not supersede legislatively." *Id.* at 444, 86 S.Ct. 1602.

**24.** *See United States v. Alvarez–Sanchez*, 511 U.S. 350, 355–56, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994) (recognizing the conflict between § 3501 and *McNabb–Mallory*, but stating that the Ninth Circuit has "concluded that the *McNabb–Mallory* rule, in either a pure or slightly modified form, applies to confessions made after the expiration of the safe harbor period" set out in § 3501); *United States v. Pugh*, 25 F.3d 669, 675 (8th Cir. 1994) (holding that § 3501 overruled *McNabb–Mallory*); *United States v. Christopher*, 956 F.2d 536, 538 (6th Cir.1991) (holding that § 3501, not *McNabb–Mallory*, governs the admissibility of confessions in federal court); *United States v. Elkins*, 774 F.2d 530, 534 n. 2 (1st Cir.1985) ("*Mallory* and *McNabb* must be read in conjunction with 18 U.S.C. § 3501(c)...."); *see also* LaFave, Israel, & King, 2 Criminal Procedure 473 (2d ed.1999).

**25.** *See* 18 U.S.C. § 3501; Rule 5(a)(1)(A), Fed. R.Crim.P.; *Schwartz*, 372 F.2d at 682 (citing *Mallory*, 354 U.S. at 454, 77 S.Ct. 1356).

(1994), the Supreme Court made clear that a delay does not compel suppression under either Rule 5(a) or § 3501 unless "there is some obligation to bring the person before [ ] a judicial officer in the first place." *Id.* at 358, 114 S.Ct. 1599; *see also United States v. Rowe*, 92 F.3d 928, 932 (9th Cir. 1996) (citing this language in *Alvarez–Sanchez* to support conclusion that § 3501 does not apply when a suspect is being held for committing a state offense). Thus, because Nguyen's indictment did not give rise to an obligation to bring him in front of a judicial officer, the alleged delay between the return of the Superseding Indictment and the arraignment cannot serve as the basis for suppression.

In sum, the December 15, 2003 statement need not be suppressed because (i) Nguyen was informed of the pending indictment against him, (ii) Nguyen was adequately advised of his *Miranda* rights, and (iii) Nguyen knowingly waived his *Miranda* rights. Moreover, Nguyen has shown no credible evidence to establish that the government investigators and prosecutor conspired to delay Nguyen's arraignment to avoid appointment of counsel. Nor is there any basis to suppress the statements based on Rule 5(a), Fed. R.Crim.P., or the *McNabb–Mallory* rule.

Accordingly, the motion to suppress must be denied and an order to this effect will issue.